UNITED STATES of America,
Plaintiff–Appellee,

v.

Bobby R. LITTLE and North Mississippi Supply Company, Inc.,
Defendants–Appellants.

No. 89–4041.

United States Court of Appeals,
Fifth Circuit.

Nov. 24, 1989.

Rehearing and Rehearing En Banc
Denied Jan. 9, 1990.

See also, D.C., 687 F.Supp. 1042.

James P. Coleman, Ackerman, Miss., Orma R. Smith, Jr., Corinth, Miss., for defendants-appellants.

John R. Hailman, Robert Q. Whitwell, U.S. Atty., Oxford, Miss., for plaintiff-appellee.

Before GARZA, WILLIAMS and DAVIS, Circuit Judges.

GARZA, Circuit Judge:

Bobby Little, sole owner of North Mississippi Supply Co., Inc., was convicted on numerous counts of Federal bribery and mail fraud after selling culvert pipe to Mississippi counties and giving kickbacks to the county officials who granted the contracts. Alleging that the counties were never defrauded because he sold the culvert at state-mandated prices, Little brought this appeal. We affirm the conviction.

*Background*

In Mississippi, each county's administration consists of supervisors who take bids and award county contracts. Seeking to uncover corruption among the supervisors, the Federal Bureau of Investigation (the "FBI") set up "Operation Pretense." Under that plan, the FBI would send a supposed salesman to see a supervisor, the salesman would offer a bribe or the like, and the FBI could then prosecute the supervisors who were attempting to defraud their counties. After several supervisors had been charged, they cooperated with federal authorities to investigate the contractors in the area to catch them in the same way.

Little sold culvert pipe to Monroe and Pontotoc counties after winning the con-

tracts in state-regulated bid processes or by selling to the counties at state-set prices. But, after he had delivered the materials to the county, he would routinely pay 5% of the purchase price back to the supervisor who had awarded him the contract. Although Mississippi has a statute requiring supervisors in that position to report and remit the payments to the county, none of the supervisors ever did. Miss. Code Ann. Sec. 31–7–23 (1972).

Little was indicted on 264 counts of federal mail fraud (18 U.S.C. § 1341), federal bribery (18 U.S.C. § 666), conspiracy (18 U.S.C. § 371), and aiding and abetting (18 U.S.C. § 2). After the district court denied his motions to dismiss, he was tried and convicted by a jury, in part based on the testimony of the convicted county supervisors who were awaiting sentencing. This appeal followed.

*Mail Fraud*

■ Little argues that, because the counties paid only the state-set price for culverts or awarded him the contract as lowest bidder, the counties were not defrauded. Therefore, he says, his actions cannot constitute a violation of the federal mail fraud statute.[1] The argument is that the county got everything it paid for, paid the state-set price or awarded the contract to the lowest bidder, and did not suffer any property damage. Little relies primarily on *McNally v. U.S.*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). In that case, the Supreme Court reversed a mail fraud conviction under section 1341, stating that the section "clearly protects property rights, but does not refer to the intangible rights of the citizenry to good government." *McNally*, 483 U.S. at 356, 107 S.Ct. at 2879, 97 L.Ed.2d at 299–300. In short, if the county did not suffer some property harm, the federal fraud statute cannot support a conviction.

Shortly after deciding *McNally*, the Supreme Court addressed the issue again in *Carpenter v. U.S.*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). There, the Court narrowed *McNally* by including intangible property rights as well as tangible in the scope of section 1341 protection.

This court has addressed *McNally*'s scope in several cases, and has held that the state entity suffers a property loss when a contractor gives a kickback from his own money, even when he was the low bidder, because the contractor was willing to sell his product to the county for the stated price less the kickback amount. *U.S. v. Fagan*, 821 F.2d 1002, 1010–1011 (5th Cir.), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988). The economic value of the knowledge that the contractor would sell for less is sufficient "property" to implicate section 1341. The result was the same in *U.S. v. Matt*, 838 F.2d 1356, 1358 (5th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2020, 100 L.Ed.2d 607 (1988) (denial of "economically material information" can constitute mail fraud) and *U.S. v. Richerson*, 833 F.2d 1147 (5th Cir. 1987) (concealing economic information constitutes a property loss).

Little argues that these cases should be distinguished because they involved unregulated markets, where his actions involved a regulated market with state-fixed prices. But those prices were ceilings, not floors. The counties may have been able to get the same materials for less than the maximum price allowed by law.

Given this construction, Little's conviction should stand in this Circuit. But Little makes much of the fact that other Circuits, construing *McNally*, disagree with the Fifth Circuit.[2] He argues that we should abandon our line of cases to bring our Circuit into step with the others. We decline to do so, and note that the other

---

1. The federal mail fraud statute, 18 U.S.C. § 1341, provides:

   "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting so to [use the

mails], shall be fined not more than $1000 or imprisoned not more than five years, or both."

2. Decisions in other Circuits include the following cases: *U.S. v. Ochs*, 842 F.2d 515 (1st Cir. 1988) (holding that a breach of fiduciary duty is not sufficient property deprivation to constitute mail fraud); *U.S. v. Covino*, 837 F.2d 65 (2d Cir.1988) (depriving state entity of material in-

Circuits are now required to be in line with us. Congress recently enacted 18 U.S.C. § 1346, which became effective November 18, 1988.[3] This new section effectively overrules *McNally* by eliminating the requirement of property loss. Although Little's conviction is not affected by section 1346, its passage ensures that this Circuit's present mail fraud jurisprudence will in the future be the nation's mail fraud jurisprudence.

### Bribery

■ Little was convicted on numerous counts of violating 18 U.S.C. § 666, the federal bribery statute.[4] He argues now that his convictions should be overturned because there was no proof of corrupt motive, since he paid the gratuities out of his own money and never intended to influence the supervisors. The jury in his trial did not believe him, but instead apparently found that the payments were rewards for past contracts and bait for the granting of future contracts. We will not disturb that verdict.

■ Little also argues that the federal bribery statute should not apply in this case absent proof that the corruption cost would have to be replaced by federal funds. That is, section 666 applies only where the agency involved receives "benefits in excess of $10,000 under a Federal program" in any given year. Sec. 666(b). But this court in *U.S. v. Westmoreland*, 841 F.2d 572, 576 (5th Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 62, 102 L.Ed.2d 39 (1989), rejected that argument in another prosecution under "Operation Pretense." There, the court held that if the agency received $10,000 in any given year, then the agents were subject to Sec. 666. There is no requirement that the particular program be the recipient of the federal funds.

### Conclusion

This Circuit's construction of *McNally* defines "property" to include economic information, such as that denied Pontotoc and Monroe counties in this case. Further, future convictions under sec. 1341 will no longer require a substantive "property" loss, so we see no reason to change our Circuit precedent to require one for this case alone. For these reasons and those stated above, Little's conviction is in all things AFFIRMED.

---

formation is not denial of property to constitute mail fraud); *U.S. v. Zauber*, 857 F.2d 137 (3rd Cir.), *cert. denied sub nom Scotto v. U.S.*, — U.S. ——, 109 S.Ct. 1340, 103 L.Ed.2d 810 (1989) (constructive trust rejected as basis for mail fraud conviction); *U.S. v. Holzer*, 840 F.2d 1343 (7th Cir.1988) (rejecting past circuit "intangible rights" precedent in light of *McNally*); *U.S. v. Slay*, 858 F.2d 1310 (8th Cir.1988) (stating that withholding information from a governmental entity is insufficient to uphold a mail fraud conviction); *U.S. v. Dadanian*, 856 F.2d 1391 (9th Cir.1988) (failure to supply property element renders indictment invalid); *U.S. v. Lance*, 848 F.2d 1497 (10th Cir.1988) (paying kickbacks does not violate the "property" requirement); *U.S. v. Conover*, 845 F.2d 266 (11th Cir.1988) (breach of fiduciary duty does not violate the mail fraud statute).

3. Section 1346 provides: "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."

4. Section 666 provides, in pertinent part: "(a) Whoever ... (2) corruptly gives, offers or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, ..., or any agent thereof, in connection with any business, transaction, or series of transactions of any such organization, government, or agency involving $5,000 or more; shall be fined under this title, imprisoned not more than ten years, or both."