**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Patricia VALENTINE, Defendant–**
**Appellant.**

**No. 94–5022.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 22, 1994.

Decided Aug. 16, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied Oct. 27, 1995.

Sarah R. Shults, Asst. U.S. Atty. (argued and briefed), Greeneville, TN, for plaintiff-appellee.

W. Thomas Dillard (argued and briefed), Wade Davies (briefed), Ritchie, Fels & Dillard, Knoxville, TN, for defendant-appellant.

Before: NELSON, SUHRHEINRICH, and SILER, Circuit Judges.

SUHRHEINRICH, J., delivered the opinion of the court, in which NELSON, J., joined. SILER, J. (p. 467), delivered a separate dissenting opinion.

SUHRHEINRICH, Circuit Judge.

Defendant Valentine appeals her conviction on two counts of violating 18 U.S.C. § 666, which prohibits an agent of an entity receiving $10,000 or more in federal funds in one year from misappropriating property val-ued at $5,000 or more. For the reasons that follow, we **REVERSE** her conviction.

## I.

Valentine worked as City Recorder for Sevierville, Tennessee, from May 1975, until she resigned her position in November 1991. While Valentine worked as City Recorder, she also worked as Secretary/Treasurer of the Sevierville Water Department from 1980 through 1991. Valentine's conduct in each position formed the basis for a count of the Indictment.

Count One of the Indictment against Valentine covered her tenure as City Recorder, and the time period from April 1989 to May 22, 1991. Testimony at trial showed that as City Recorder, Valentine supervised the fiscal affairs of the city, collected taxes and revenues, dispersed operational funds and issued paychecks. In 1990, the Chief of Police contacted the FBI after Valentine was unable to explain what happened to the funds forwarded to the city by the police for parking tickets and copying fees. Not all of this money, which was given either to Valentine or one of the cashiers at the city recorder's office, had been deposited. At Valentine's direction, a portion of the money was never entered into the books or recorded in the daily cash reports. Instead, the money was placed in the "kitty," a drawer in Valentine's office. Cashier Kim Graves testified that copy money went to the kitty because parking money was easily traced by the presence of a ticket. Copy money not diverted into the kitty was receipted on the "supplies account" and recorded in the daily cash report as revenue to the supplies account. During the relevant time, the police collected $11,769.50 for copying fees, but only $3,406.50 was receipted in the books and deposited. Thus, $8,363 was diverted to the kitty.

Count Two of the Indictment covers Valentine's tenure as Secretary/Treasurer of the Water Department from July 1988 through May 1991. Under Count Two, the government alleged that Valentine required water department employees to run her personal errands during working hours. Not only did employees perform these chores during work

hours, they used city-owned vehicles and equipment to do them. The trial testimony revealed that the chores included grocery shopping and delivery, paying Valentine's personal bills, moving firewood and providing transportation to Valentine's maid. One employee, Joanne Bettes, estimated that the amount of time she spent completing these chores resulted in a loss calculated at $7,000 in wages paid. Other witnesses testified that they performed services for Valentine including landscaping, trimming trees, and delivery of furniture.

The jury found Valentine guilty on both counts. She now appeals her conviction.

## II.

■ Valentine challenges the district court's interpretation of § 666, a matter we review de novo. *United States v. Hans,* 921 F.2d 81, 82 (6th Cir.1990). In assessing the reach of a federal criminal statute, we are obliged to heed the language of the statute, its legislative history and the purpose underlying its enactment. *Dowling v. United States,* 473 U.S. 207, 213, 105 S.Ct. 3127, 3131, 87 L.Ed.2d 152 (1985).

The language of the charging statute reads in pertinent part as follows:

(a) Whoever, if the circumstance described in subsection (b) of this section exists—

(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—

(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—

(i) is valued·at $5,000 or more, and

(ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; ... shall be fined under this title, imprisoned not more that 10 years, or both.

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guar-

antee, insurance, or other form of Federal assistance.

(c) This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.

18 U.S.C. § 666.

To bring Valentine within the boundaries of § 666, the government must establish the following elements. First, the government must show that Valentine was an agent of local government at the time of the offense. 18 U.S.C. § 666(a)(1). Here, it is undisputed that Valentine was an agent of city government and the water department. Second, the government must show that Valentine embezzled, stole, fraudulently obtained or willingly converted property worth at least $5,000 which was under the control, care or supervision of the city and water department. 18 U.S.C. § 666(a)(1)(A)(i), (ii). Third, the government must show that the above elements occurred during a time in which the city and the water department received in excess of $10,000 in any one year from a qualifying federal assistance program. 18 U.S.C. § 666(b).

Defendant contends that the statute does not criminalize her conduct for three reasons: (1) the $5,000 misappropriation threshold was not met; (2) the funds misappropriated were not connected to a federal program; and (3) the statute exempts theft of employee services. We discuss each in turn.

## A. MISAPPROPRIATION THRESHOLD

■ The first issue involving interpretation of the statute arises out of the $5,000 minimum threshold requirement and concerns the proper time frame that the government may use to reach the minimum amount. In short, the question presented is whether § 666(a)(1)(A)(i) of the statute criminalizes multiple conversions of less than $5,000, if more than one year is needed to reach the $5,000 statutory minimum.

Defendant contends that to establish a violation under the statute, the government must prove at a minimum that she misappropriated property valued at $5,000 *within a*

*one-year period.* The government counters that the aggregation of thefts occurring beyond a one-year time frame is permissible. Both counts in the Indictment cover a three-year period, and the evidence at trial covered events occurring during those years specified in the Indictment. The government made no attempt to separate incidents of theft by the year in which they occurred.

The rules of construction direct our attention first to the language of the statute to resolve this dispute. The government correctly states that no explicit time restraint is placed on the length of time needed to reach the $5,000 minimum in § 666(a)(1)(A)(i). Our inquiry does not end with this observation; a proper reading requires attention to the statute in its entirety.

We note that the statute is violated by a $5,000 theft only "if the circumstance described in subsection (b) ... *exists.*" 18 U.S.C. § 666(a) (emphasis added). Subsection (a) specifically incorporates the elements of subsection (b). Therefore, if subsection (b) contains a time restraint, it is applicable to subsection (a).

Subsection (b) defines the federal funding requirement, limiting subsection (a) to an agency that receives benefits greater than $10,000 in any one year. The term "any one year" is defined in subsection (d)(5), as follows:

> a continuous period that commences no earlier than twelve months before the commission of the offense or that ends no later than twelve months after the commission of the offense. Such period may include time both before and after the commission of the offense.

The interrelationship between subsections (a) and (b) of the statute mandate that a one-year limitation likewise attaches to the $5,000 threshold requirement.

■ Our reading of the statute is bolstered by another rule of construction: that "Congress' use of a verb tense is significant in construing statutes." *United States v. Wilson,* 503 U.S. 329, 333, 112 S.Ct. 1351, 1354, 117 L.Ed.2d 593 (1992). Because Congress used verbs in the present tense in this statute, it indicated that the "commission" of

the theft must be completed within a one-year period of time. Specifically, the text of subsection (b) requires that the agency receive $10,000 in any one-year period. Thus a financial limitation and a temporal limitation are incorporated in this provision. The language relevant to the one-year period indicates the availability of three measurements to meet the time restriction; the one-year time measurement may start twelve months before the theft, it may end twelve months after the theft or it may include time both before and after the commission of the offense. Because the one-year period includes time both before and after the theft, a natural reading of the statute incorporates a finding that the offense must fall within the twelve-month window. In sum, proof must be of any one-year period that includes the date(s) of the crime.

We find no expressed legislative intent contrary to our reading. Congress enacted § 666 as part of the Comprehensive Crime Control Act of 1984. The discussion of subsection (a) is brief; it reads in relevant part as follows:

> This part of title XI is designed to create new offenses to augment the ability of the United States to vindicate significant acts of theft, fraud, and bribery involving Federal monies that are disbursed to private organizations of State and local governments pursuant to a Federal program.

S.Rep. No. 225, 98th Cong., 2d Sess. 369, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3510 (hereinafter S.Rep.). Despite the brevity of the discussion, it is apparent that Congress intended to expand the federal government's prosecutorial power to encompass significant misapplication of federal funds at a local level.

■ The phrase "significant acts of theft" implies that Congress did not intend the statute to reach theft of minimal amounts or theft aggregated over long periods of time. The temporal limitation requirement, in conjunction with the monetary threshold requirement, meets that stated objective. The government's construction of the statute, on the other hand, would nullify the limitation desired by Congress. Although this issue is

one of first impression,[1] inferential support can be found in *United States v. Urlacher*, 784 F.Supp. 61, 63 (W.D.N.Y.), *aff'd*, 979 F.2d 935 (2d Cir.1992) (holding that the source of the federal funds was not a relevant factor in determining the number of violations). In that case, the district court concluded that the proper unit of prosecution was one count per entity per one-year period. Consequently, the court refused to allow the government to reach the $5,000 minimum and then start the aggregation process again, charging defendant with multiple violations for conduct that occurred in a one-year time frame.

■ Again, nothing in the legislative history shows that Congress intended to reach theft of insignificant amounts by allowing the government to aggregate conduct over an indefinite, expansive period of time. Accordingly, we hold that a natural reading of the statute requires the $5,000 theft to occur during a one-year period. Here, the indictment improperly included numerous incidents of theft over a three-year period as did the evidence presented at trial, and for this reason, neither defendant's conviction on Count One or Count Two may stand.

## B. NATURE OF BENEFITS

■ The second issue requiring interpretation of the statute is whether the government must prove that the *misappropriated funds* came from a federal program. Valentine argues that because the police copy fund involved money that was entirely local in source, her prosecution violates the statute and offends the notion of federalism. Neither the statutory language nor the legislative history supports her argument.

After reviewing the provision at issue, the plain language prompted the court in *United States v. Westmoreland*, 841 F.2d 572, 577 (5th Cir.), *cert. denied*, 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 39 (1988), to hold that there was no need for the United States to trace stolen money, noting that any "reference to federal funds is conspicuously absent from the operative provision [contained in § 666(a) ]." *Accord, United States v. Wyncoop*, 11 F.3d 119 (9th Cir.1993); *United States v. Coyne*, 4 F.3d 100 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 929, 127 L.Ed.2d 221 (1994); *United States v. Simas*, 937 F.2d 459 (9th Cir.1991); *United States v. Little*, 889 F.2d 1367 (5th Cir.1989), *cert. denied*, 495 U.S. 933, 110 S.Ct. 2176, 109 L.Ed.2d 505 (1990).

The legislative history reveals that Congress intended that § 666 would close the gap identified in 18 U.S.C. § 641 which governs general theft of federal property, but only if the property stolen is property of the United States. S.Rep. at 3510. Because prosecution under § 641 was barred if the title to federal property passed to the recipient agency before the property was stolen or if federal funds were commingled with state funds, the language of § 666 did not specify that the funds misappropriated must be federal. Thus, we find that the statute does not require the government to demonstrate the federal character of the stolen property. The statute addresses the relationship between the federal government and the local government from which the property was stolen, not the relationship between the federal government and the converted property. Moreover, in focusing on the nonfederal entity rather than the property, Congress hoped to encourage local prosecutors to safeguard federal program monies, thereby alleviating yet another problem with protecting federal program funds that resulted because of state or local prosecutors' reluctance to use their own resources to pursue criminal actions when the federal government was the principal party aggrieved. Congress stated that, in its opinion, "state and local prosecutors were often not inclined to commit their limited resources" because the injured party was

---

1. The government relies on the indictment in *United States v. Sanderson*, 966 F.2d 184 (6th Cir.1992) as support for its contention that there is no one-year time limit. In *Sanderson*, the indictment covered acts from October 1985 through December 1986; however, the time issue was not raised on appeal. Thus, *Sanderson* is not authority that supports the government's position. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 119 & n. 29, 104 S.Ct. 900, 918 & n. 29, 79 L.Ed.2d 67 (1984); *Appeal of Federal Land Bank of St. Louis (In re Stegall)*, 865 F.2d 140, 142 (7th Cir.1989)(holding that a matter of law that is assumed but not discussed is not authoritative).

the United States. S.Rep. No. 307, 97th Cong., 1st Sess. 726 (1981) (discussing the recurring problems in federal criminal law governing theft and bribery).

Although Valentine believes that this expansive interpretation extends federal power in these circumstances to a matter which implicates no federal interest, the language of the statute omits any reference to federal funds. Congress intended to protect federal funds by exerting control over the agencies that benefit from them, a purpose well within its authority. Accordingly, we find defendant's argument meritless.

### C. EMPLOYEE SERVICES

█ Next, defendant contends that because the statute "does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business," 18 U.S.C. § 666(c), Count Two of the Indictment must be dismissed. According to Valentine, the government presented proof that Valentine misappropriated employee time and that the water department incurred loss based upon the salaries of the employees.

The construction of subsection (c), as related to this argument, has not been addressed by the circuit courts. Defendant refers the court to the district court opinion in *United States v. Harloff*, 815 F.Supp. 618 (W.D.N.Y. 1993), a case she mistakenly believes supports her position. In *Harloff*, the government prosecuted Rochester police officers, charged with consistently working fewer hours than reflected by their pay checks. The *Harloff* court held that the statute did not apply, stating that the statute "prohibits a prosecution under § 666 based on an employee's accepting wages for more hours than s/he actually worked." *Id.* at 619.

We agree with the court's decision; nevertheless, *Harloff* does not help the defendant. Here, the government prosecution of Valentine includes no allegation concerning her own salary, nor the salary of others. Rather, the government presented proof that Valentine misappropriated employee services. The plain language of the statute does not preclude prosecution on this basis.

Further, the relevant legislative history does not contradict this reading. The "bona fide salary" amendment received little comment.

> [This section] of the bill amends 18 U.S.C. 666, which deals with theft or bribery concerning programs receiving federal funds. [It] clarifies that 18 U.S.C. 666 covers programs of Indian Tribal governments and Tribal government agencies. In addition, [the section] amends 18 U.S.C. 666 to avoid its possible application to acceptable commercial and business practices. (footnote omitted) ...

H.R.Rep. No. 797, 99th Cong., 2d Sess. 30, *reprinted in* 1986 U.S.C.C.A.N. 6138, 6153. Certainly, the use of employees for personal errands and chores is not an acceptable business practice. Moreover, in *United States v. Sanderson*, 966 F.2d 184, 189 (6th Cir.1992), this circuit held that the theft of property included theft of employee services. We find no basis for dismissing Count Two on this ground.

In sum, we find that the only statutory interpretation issue raised by defendant that warrants reversal is the proper unit of prosecution. Defendant has also raised one claim based on the sufficiency of the evidence, a claim that we believe has merit.[2] Because the success of such an argument impacts the government's ability to retry the case, we address the claim.

### III. SUFFICIENCY OF THE EVIDENCE

Defendant claims that the government's proof failed to establish a necessary element of the crime: the existence of a single scheme involving theft of $5,000 worth of property from the water department.

---

**2.** Defendant also challenges the sufficiency of the evidence used to establish the benefits element of the statute and the admissibility of a summary witness chart. We find the record contains sufficient evidence to establish that the city and the water department received $10,000 in federal benefits. Further we find the district court did not abuse its discretion in admitting the summary chart into evidence.

The standard of review for a claim of insufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir.1989) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

There is ample support for allowing the government to aggregate several acts to establish the $5,000 threshold required for prosecution where the multiple conversions are part of a single scheme. *See, e.g., Sanderson*, 966 F.2d at 189 (holding that "when one steals paint and supplies and then orders employees to use such materials in private contract work, both actions will be considered components of the larger, single fraudulent act of theft from the local government"). The district court instructed the jury in that regard, stating that the government had the burden to "establish beyond a reasonable doubt that the illegally obtained property had an aggregate value in excess of $5,000." Additionally, the district court directed the jury as follows:

> You may aggregate or add up the property obtained from a variety of acts and thefts to meet the requisite $5,000 so long as you find each act of theft was part of the scheme by the defendant to obtain property by theft from as to Count 1 of the indictment the City of Sevierville or as to Count 2 of the indictment the Water Department for the City of Sevierville.
>
> In order for an aggregation to be appropriate you must find that the government has proven beyond a reasonable doubt that the transactions were part of the single scheme or plan the intent of which was to convert or intentionally misapply the property value of more than $5,000 as to each count of the indictment.

Defendant contends that she was prejudiced by the aggregation in two ways. First, the district court's failure to require the government to offer any indication as to how the evidence tied to one single scheme allowed the jury to be exposed to evidence that should have been barred by Fed.R.Evid. 404.

Second, the misappropriations differed dramatically in time and manner of execution; thus, as a matter of law, they were not part of a single scheme.

As to defendant's first contention, we are persuaded that the district court correctly allowed each party to offer proof bearing on its interpretation of how the transactions were a single scheme rather than separate, unrelated thefts. The district court's decision regarding the mode and presentation of proof is reviewed under the abuse of discretion standard and will not be reversed unless it affects substantial rights. *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir.1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). The procedure did not infringe upon defendant's rights.

Defendant's second contention, that her theft of employee services from the water department did not constitute a single scheme, implicates a question of fact to be decided by the jury. *United States v. Little*, 687 F.Supp. 1042, 1051 (N.D.Miss.1988), *aff'd*, 889 F.2d 1367 (5th Cir.1989), *cert. denied*, 495 U.S. 933, 110 S.Ct. 2176, 109 L.Ed.2d 505 (1990). The district court properly instructed the jury, and the jury decided that Valentine's series of thefts from the water department were part of a single scheme.

The government presented sufficient evidence to support its theory that the thefts arose out of a master plan, notwithstanding the temporal and geographic variations occurring in each act of theft. Valentine's oral representations to water department employees, that city officials would not begrudge her the use of their time and services or the use of city vehicles to perform her personal errands during work hours, reflect her plan to avail herself of water department property whenever possible. Although Valentine used several employees to carry out her scheme, her victim remained constant.

Accordingly, we hold that, after viewing the evidence in the light most favorable to the government, there is sufficient evidence from which the jury could find that Valen-

tine's conduct at the water department involved a single scheme.

### IV.

For the foregoing reasons, we hold that defendant's conviction must be **REVERSED**, and we **REMAND** this matter to the district court with instructions to dismiss the Indictment.

SILER, Circuit Judge, dissenting.

I respectfully dissent, as I feel that the majority is limiting 18 U.S.C. § 666 more than is justified, either by reading the statute itself or through the legislative history.

The jurisdictional requirement of the statute is that the organization receive benefits worth more than $10,000.00 under a federal program in a one-year period. 18 U.S.C. § 666(b). Then, the offense occurs when the accused takes property that is worth $5,000.00 or more. The statute does not mention that the theft has to occur during a one-year period, or that the one-year period has to be the same as that listed in § 666(b). The purpose of promulgating this statute, in part, was to augment the more restrictive theft provisions of 18 U.S.C. § 641, which requires that the property stolen belongs to the United States. *See United States v. Sanderson*, 966 F.2d 184, 188 (6th Cir.1992).

Although the majority opinion indicates that the intent of Congress was to prosecute "significant acts of theft," that is explicit in the statute, which has a threshold of $5,000.00. The theft is significant when it exceeds $5,000.00. However, there is no reason why the theft could not occur over a period of time or through several transactions. *See id.* Therefore, I disagree with the majority's conclusion that the statute requires the $5,000.00 theft to occur during a one-year period. The statute only requires that the theft overlap with the one-year time frame set out in § 666(b).

Because I agree with the other legal conclusions in the majority opinion, I would affirm the judgment of the district court.