**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Frederick DAKOTA (97–2256) and Jerrold Polinsky (97–2257), Defendants–Appellants.**

Nos. 97–2256, 97–2257.

United States Court of Appeals, Sixth Circuit.

Argued: Aug. 3, 1999.

Decided and Filed: Dec. 17, 1999.

822

Judd R. Spray (argued and briefed), Office of the U.S. Attorney, Marquette, Michigan, for Plaintiff–Appellee.

Mark P. Stevens (briefed), Marquette, Michigan, Stuart G. Friedman (argued and briefed), Ann Arbor, Michigan, for Defendant–Appellant Dakota.

C. Mark Pickrell (argued and briefed), Nashville, Tennessee, for Defendant–Appellant Polinsky.

Before: SILER and GILMAN, Circuit Judges; GRAHAM, District Judge.[*]

## AMENDED OPINION

SILER, Circuit Judge.

Defendant Jerrold Polinsky appeals his convictions for paying kickbacks to an agent of an Indian tribal organization, a violation of 18 U.S.C. § 666, and of conspiracy to violate 18 U.S.C. § 666. Defendant Fred Dakota appeals his convictions for receiving kickbacks, in violation of 18 U.S.C. § 666, and income tax fraud, in violation of 26 U.S.C. § 7206. Both challenge the admission of hearsay evidence under the business records exception, while Dakota also challenges a violation of his attorney-client privilege, improper jury instructions, lack of a nexus between the alleged payments and federal funds, transfer of venue, prosecutorial misconduct and double jeopardy. We affirm.

## BACKGROUND

Keweenaw Bay Indian Community ("KBIC") is a tribe of Chippewa Indians which operated a gaming casino on its reservation in Michigan using gaming machines leased from International Gaming Management ("IGM") during 1991, 1992, and 1993. Polinsky is one of the founders of IGM and is its largest shareholder. He is also the sole shareholder of Spectrum Communications ("Spectrum"). During the period of the lease between KBIC and IGM, Spectrum acted as IGM's agent in placing gaming machines in Michigan. Also during this period, KBIC received more than $10,000 in any twelve-month period pursuant to various federal programs.

Evidence relating to the kickback scheme showed payments from KBIC to IGM, from IGM to Spectrum, and from Spectrum to Dakota. Documents including check registers and canceled checks from IGM and Spectrum indicated this chain of payment. Special Agent Timothy Reed testified about documents seized at the home of Gary Polinsky, Jerrold Polinsky's son who was associated with IGM in a consulting capacity. For most of the payments Reed traced, he used documents from the home of Gary Polinsky. Dakota's

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

tax returns for 1991, 1992, and 1993 did not include income from Spectrum.

Tribal attorney Joseph O'Leary testified to conversations with Dakota which took place in 1991. After O'Leary questioned Dakota about kickbacks, Dakota asked him whether it would be appropriate if Dakota were to obtain a share of the profits generated by installing certain video lottery devices on the reservation. O'Leary advised him twice that he would need to make a disclosure to the tribal council before they voted to install such devices.

Dakota and Polinsky testified that Dakota had been paid by Spectrum as a spokesperson for a proposed telephone lottery to be run by IGM. They claimed that the payments to Dakota were advances. Dakota says that he did not report the money as current income in the disputed tax years because the monies were to be repaid to Spectrum if not later earned. An IRS agent testified that the money received by Dakota was taxable income whether or not characterized as advances.

After the close of the prosecution's case-in-chief, the district court granted a defense Rule 29 motion in part by consolidating all fifty counts of substantive violations of 18 U.S.C. § 666 against Dakota and Polinsky with the conspiracy count. The government requested reconsideration of that decision, asking that one substantive count go to the jury along with the conspiracy count. At the end of all evidence, the district court reinstated one substantive count.

## DISCUSSION

### I. ATTORNEY–CLIENT PRIVILEGE

■ This court reviews *de novo* a district court's decision regarding waiver of the attorney-client privilege. *See United States v. Collis*, 128 F.3d 313, 320 (6th Cir.1997). The burden of establishing the existence of the privilege rests with the person asserting it. *See In re Grand Jury Investigation No. 83–2–35*, 723 F.2d 447, 450 (6th Cir.1983). Absent an indication that the lawyer should act in a capacity other than that of the company's lawyer, a corporate officer will not have a privilege. *See In re Grand Jury Proceedings, Detroit Michigan, August, 1977*, 434 F.Supp. 648, 650 (E.D.Mich.1977), *aff'd*, 570 F.2d 562, 563 (6th Cir.1978) (affirming for the reasons set forth in the district court opinion).

■ The only evidence Dakota submitted in support of his claim of privilege was the affidavit of O'Leary, which is insufficient to support the claim of attorney[1]-client privilege. O'Leary was counsel for KBIC, and his affidavit does not establish that Dakota contacted O'Leary for legal advice as an individual as opposed to seeking advice from O'Leary in his position as tribal attorney. The district court correctly ruled that Dakota's conversations with O'Leary were not protected by the attorney-client privilege.

■ The attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties. *See In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir.1996). In addition, a client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure. *See In re von Bulow*, 828 F.2d 94, 104 (2d Cir.1987). Here, the KBIC impliedly consented to inspec-

1. Dakota has petitioned the court for a rehearing, asserting that the court mistakenly stated that the only evidence Dakota presented to show such a relationship was the affidavit of O'Leary. It is true that Dakota presented his own affidavit to assert the attorney-client relationship, but it was filed subsequent to the ruling by the magistrate judge that no attorney-client privilege existed between O'Leary and Dakota. That ruling was upheld by the district court, which went on to hold that even considering the Dakota affidavit, there was insufficient evidence to establish the existence of an attorney-client relationship. Therefore, even considering the tardily-filed affidavit by Dakota, we hold the district court did not err in finding that there was no attorney-client relationship between O'Leary and Dakota.

tion of its documents, which the defendants obtained by subpoena from its offices while those offices were occupied by an activist group, many of whom were not tribal officers. The KBIC did not object to the subpoena or the inspection of the documents by any of investigators. In addition, the KBIC did not object to Polinsky's use of the documents although he is not a member of the tribe. Any joint defense agreement between Dakota and Polinsky would not alter the nature of Polinsky's inspection of the documents. Perhaps most importantly, Dakota does not state on appeal which, if any, of the controversial KBIC documents were placed into evidence and how that evidence harmed him at trial. Without a showing that the documents were placed into evidence, this court cannot determine whether the documents were improperly disclosed in violation of the KBIC's privilege. Thus, the trial court acted properly in finding a valid waiver.

## II. INSTRUCTIONS

 As to the alleged error in the tax fraud instructions, this court reviews jury instructions as a whole "to determine whether they fairly and adequately submitted the issues and applicable law to the jury." *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir.1991). The instructions were a correct statement of the law and substantially covered Dakota's defense theory that the unreported amounts were advances with a duty for repayment. The district court did not err here.

## III. FUNDING NEXUS

 Dakota argues that 18 U.S.C. § 666 requires that the government demonstrate a nexus between the alleged bribes and the federal funding received by KBIC. Issues of statutory construction are reviewed *de novo*. *See United States v. Wuliger*, 981 F.2d 1497 (6th Cir.1992). Under *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), no direct link is required between the fed-

eral monies and the corrupt activity for conviction under § 666, but the nature of any necessary connection is left unanswered. In *United States v. Valentine*, 63 F.3d 459 (6th Cir.1995), this court construed another provision of § 666 and found that the statute requires no relationship between the illegal activity and the federal funding. Thus, the district court correctly ruled that 18 U.S.C. § 666 does not require a nexus between the alleged bribes and the federal funding received by KBIC.

## IV. DOUBLE JEOPARDY

 A claim of double jeopardy is reviewed *de novo*. *See United States v. Neal*, 93 F.3d 219, 220 (6th Cir.1996). Although a defendant "once acquitted may not be again subjected to trial without violating the Double Jeopardy Clause," double jeopardy does not bar retrial when "the defendant elected to seek termination of the trial on grounds unrelated to guilt or innocence." *United States v. Scott*, 437 U.S. 82, 96, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). The district court did not resolve any of the factual elements of the charged offenses in Dakota's favor. Instead, it initially made a legal decision that the multiple substantive counts of violations of § 666 should be viewed as overt acts in furtherance of the conspiracy rather than as separate crimes. The government requested reconsideration, and the court subsequently reinstated one substantive count. Because the district court did not factually acquit Dakota, the Double Jeopardy Clause does not bar reinstatement of the substantive charge.

## V. VENUE

 The district court's decision to transfer venue from Marquette to Grand Rapids within the same district is governed by Rule 18 of the Federal Rules of Criminal Procedure and reviewed for abuse of discretion. *See In re Ford*, 987 F.2d 334, 342 (6th Cir.1992). The district

court found that the interests of justice outweighed the expense and inconvenience of the transfer. It did not abuse its discretion when it transferred the case to Grand Rapids.

## VI. ANONYMOUS JURY

The decision to empanel an anonymous jury is reviewed for an abuse of discretion. *See United States v. Talley*, 164 F.3d 989, 1001 (6th Cir.1999). The district court decided to empanel a partially anonymous jury in order to minimize the prejudicial effects of pretrial publicity and an emotional, political atmosphere that created a risk of jury intimidation and improper influence. The court created a solution to remedy the concern about potential juror intimidation which avoided possible juror bias, and it did not abuse its discretion in doing so.

## VII. ADMISSION OF DOCUMENTS

Dakota and Polinsky challenge the admission of documents seized from Gary Polinsky's home office, arguing that the documents were inadmissible hearsay. The government argues that the documents were admissible under the business records exception, Federal Rule of Evidence 803(6), or under the exception for admissions made by a co-conspirator, Rule 801(d)(2)(E). "While this court typically reviews evidentiary rulings under an abuse of discretion standard, this court reviews 'de novo a district court's conclusion whether proffered evidence is inadmissible hearsay.'" *United States v. Latouf*, 132 F.3d 320, 329 (6th Cir.1997) (quoting *United States v. Fountain*, 2 F.3d 656, 668 (6th Cir.1993)). To be admitted under the business records exception, the record must have been kept in the course of regularly conducted business activity, the regular practice of the business must have been to make the record, and the record must have been contemporaneously made by a person with knowledge of the transaction or from information transmitted by a person with knowledge. *See United States v. Stavroff*, 149 F.3d 478, 484 (6th Cir. 1998). The witness testifying at trial must have knowledge of the record keeping procedures of the business. *See United States v. Sturman*, 951 F.2d 1466, 1489 (6th Cir.1991).

The district court did not explicitly state which hearsay exception was applicable to the documents seized from Gary Polinsky's home office, but because the business records exception was the government's favored theory of admissibility at trial and on appeal, this court may conclude that the evidence was admitted under that exception. *See United States v. Fawaz*, 881 F.2d 259, 266 (6th Cir.1989). The admission of the documents was supported by the testimony of Agent Reed, who was present when the documents were seized and who had analyzed the documents for their relevance to the issues at trial. He did not have knowledge of the recordkeeping procedures of Gary Polinsky's business and was certainly not the custodian of those records for the business. The district court erred in admitting the documents as business records.

The government argues that even if the documents were not admissible as business records, they are admissible as statements by co-conspirators, under Rule 801(d)(2)(E). However, "[b]efore a district court may admit statements of a co-conspirator, three factors must be established: (1) that the conspiracy existed; (2) that defendant was a member of the conspiracy; and (3) that the co-conspirator's statements were made in furtherance of the conspiracy." *United States v. Wilson*, 168 F.3d 916, 920 (6th Cir.1999). The district court made no findings regarding Gary Polinsky's role in the conspiracy which would satisfy the prerequisites for admissibility under Rule 801(d)(2)(E). The government also urges that the catch-all hearsay exception in Rule 803(24) applies to the documents, but the prerequisites for admission under that rule have not been met, as the government did not give the

required pretrial notice to defendants. See FED.R.EVID. 803(24).

■ Even though the district court erred in admitting the documents from Gary Polinsky's home office, the error was harmless. *See United States v. Wiedyk*, 71 F.3d 602, 607 (6th Cir.1995). The evidence from these documents found in the safe merely corroborates other evidence that Jerrold Polinsky was paying Dakota. The fact that payments were made was not in dispute; defendants said they were advancements for a telephone lottery.

## VIII. PROSECUTORIAL MISCONDUCT

■ A claim of prosecutorial misconduct is evaluated in light of the record as a whole. *See United States v. Causey*, 834 F.2d 1277, 1284 (6th Cir.1987). This court has set forth a two-part test to be applied to claims of prosecutorial misconduct. First, the court determines whether the prosecutor's remarks were improper. *See United States v. Carroll*, 26 F.3d 1380, 1387 (6th Cir.1994). Improper conduct is then examined for flagrancy, considering four factors: (1) the degree to which the remarks would mislead the jury and prejudice the accused, including whether a cautionary instruction was given to the jury; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused. *See id.* at 1384, 1389. If the conduct is found not to be flagrant, reversal is appropriate only when (1) the proof against the defendant was not overwhelming, (2) opposing counsel objected to the conduct, and (3) the district court failed to give a curative instruction. *See id.* at 1390.

■ Here Dakota challenges remarks which accused him of fabricating his defense along with his lawyers and accountants, implied that he was taking money intended for his tribe, and alleged connections between co-defendant Polinsky and the Mafia. Objections to both the defense fabrication remark and the Mafia remark were sustained. No cautionary instruction was given to the jury regarding the defense fabrication remark. When considered in light of the trial as a whole, these remarks cannot be said to have been flagrant. Three separate and unrelated remarks in this trial cannot be classified as extensive and therefore do not constitute grounds for reversal.

AFFIRMED.