UNITED STATES of America,
Plaintiff,

v.

(D–1) Karim KOUBRITI, (D–2) Ahmed Hannan, (D–4) Abdel–Ilah Elmardoudi, a/k/a, Abdella (LNU), a/k/a Nassim Hillali, a/k/a Hussein Mohsen Safiddine, a/k/a Abdelilah El Mardoudi, a/k/a Abdell Ilah Naji, a/k/a Nelson R. Feliciano, a/k/a Nelson Rafael Feliciano Vargas, a/k/a Nelson R. Feliciano Vargas, a/k/a Nelson R. Falecian, a/k/a Jean Pierre Tardelli, a/k/a George Labibe, a/k/a Hussein Mohsen Safiddine, a/k/a Nabil Hayamm, (D–5) Farouk Ali–Haimoud, a/k/a Khalid, Defendants.

No. 01–CR–80778.

United States District Court,
E.D. Michigan,
Southern Division.

March 14, 2003.

AUSA Richard Convertino and AUSA Keith Corbett Detroit, for plaintiff.

Leroy Soles, Esq., Richard Helfrick and James Gerometta, Esq. for Defendant Koubriti.

James Thomas for Defendant Hannan, Detroit.

William Swor for Defendant El Mardoudi, Detroit.

Robert Morgan for Defendant Ali–Haimoud, Detroit.

*MEMORANDUM OPINION AND OR-*
*DER REGARDING DEFENDANTS'*
*MOTION OPPOSING THE EM-*
*PANELING OF AN ANONYMOUS*
*JURY*

ROSEN, District Judge.

## I. *INTRODUCTION*

Defendants Karim Koubriti, Ahmed Hannan, Abdel Ilah El–Mardoudi and Farouk Ali–Haimoud, through counsel, have filed a motion opposing the empaneling of an anonymous jury in this case on the grounds that it impacts on the presumption of their innocence and due process rights by giving the jurors the notion that they are sitting in judgment of "bad" and/or "dangerous individuals who pose a threat to their well-being and suggests that Defendants might have people in the community that could harm them. Having reviewed and considered Defendants' motion and supporting brief, the Court rejects Defendants' request that the Court dismiss the prospective "anonymous" jury pool and empanel a new "non-anonymous" pool from which to select jurors to try this case. This Memorandum Opinion and Order sets forth the Court's ruling on this matter.

## II. *PERTINENT FACTS*

Defendants Karim Koubriti, Ahmed Hannan and Farouk Ali–Haimoud were arrested on September 17, 2001, i.e., within a week of the September 11 attacks on the World Trade Center and the Pentagon, when FBI/Joint Terrorism Task Force agents found them while searching for persons who might have knowledge or information concerning the perpetrators of the terrorist attacks. Specifically, the agents were looking for Nabil Al–Marabh, who was listed on the United States terrorist "watch list." The Task Force learned that Al–Marabh had a residence at 2653 Norman Street in Detroit. Therefore, on September 17, 2001, Task Force agents went to the Norman Street residence where they observed Al–Marabh's name on the mailbox for one of the apartments.

Al–Marabh was not at the Norman Street residence; instead, the agents found Defendants Koubriti, Hannan and Ali–Haimoud in the apartment and found them to be in possession of a number of fraudulent passports, visas, social security cards and alien registration cards as well as a day planner containing notations and references to the "American base in Turkey;" the "American foreign minister;" and "Alia Airport," in Jordan. The day planner also contained sketches of what appeared to be a diagram of an airport flight line, aircraft and runways. False document charges were subsequently filed against these three Defendants.

In the ensuing months, the Government's continued investigation into the events of September 11 and these three original Defendants uncovered other individuals and activities giving rise to the present Third Superseding Indictment charging Defendants Koubriti, Hannan, Ali–Haimoud and Abdel Ilah El–Mardoudi with conspiracy to provide material support or resources to terrorists, conspiracy to engage in document fraud, and document fraud.

Over the past eighteen months, this case has drawn a great deal of media attention, both locally and nationally. Furthermore, particularly in the aftermath of the events of September 11, public emotions concerning "terrorism" are still highly charged. Given that this case is the first post-September 11 case to go to trial which raises issues bearing on international terrorism, the Court determined that to protect potential jurors from undue harassment by the media and other curiosity-seekers, it would be in the best interest of the jurors and the parties that the jury in this case remain anonymous.

The Court subsequently explained its reasons for an anonymous jury in its remarks to potential jurors on February 21, 2003:

> ... I want to tell you a couple of additional facts about the case that... may help you understand how the privacy of jurors can and will be preserved in a case like this in which there has been a good deal of public interest.
>
> Some of you have heard or read about jurors being sequestered. The jury in this case will not be sequestered. I know that will make some of you very happy. The jurors will go home every night and will join their families. However, because we are not sequestering the jury, there will be some very specific instructions that you must follow, and I want to talk about those.
>
> First, the jury will be chosen anonymously, and I'm going to tell you in just a moment about why we are choosing an anonymous jury. The names and addresses and any other identifying information about jurors, such as their place of employment or where they live, will not be disclosed to anyone other than the jury clerk who will send each juror his or her check for jury service. *That is to assure the privacy of the jurors and assure that the privacy can preserved throughout the trial and that you are not contacted by the press or anyone else who may be curious about the case and want to talk to you about it and thereby gain information about the case.*
>
> In addition, each juror will be picked up each morning by a Deputy United States Marshal at some convenient meeting place that the marshals will establish or perhaps at several different places... and from there they will be driven to the courthouse. *Again, this is not being done so much because we are concerned that you are in any jeopardy. Your safety isn't in any jeopardy at all. It is done so that you do not have to drive to the courthouse and perhaps have reporters or others look at your license plates and thereby identify you....*
>
> * * * * * *
>
> As I mentioned, nobody but the jury clerk will know your identity. Nobody but the jury clerk will know the identity of any juror. Each of you has been given a juror number. That number should go on the [jury questionnaire] form in the designated space. Please do not put your name anywhere on the form, with the exception is the very last sheet, which is the signature sheet. The only person who has a list of the names corresponding to the numbers you have is our jury clerk, and she is the one who will issue the checks to the jurors for their jury service. So the lawyers and others who will get copies of the questionnaire to review will not know your names or other identifying information about you.
>
> And, I should add when you return here on March 18th, you should not wear any identifying information like monograms or anything like that, and please do not bring with you any magazines or books that has [sic] your name or address on it.... *As I told you, this is for your own privacy rights so that people will not be tempted to talk to you about the case. Our goal in impaneling [sic] an anonymous jury is to protect your privacy and your ability to decide this case without any external influences brought to bear upon you.*

[2/21/03 Tr. pp. 12–13, 24–25 (emphasis added).]

Defendants now object to having an anonymous jury try this case on the grounds that it would suggest to the jury and the public that they are "bad" or "dangerous" individuals who pose a threat to the jurors.

## III. *DISCUSSION*

■ The decision to empanel an anonymous jury is a matter within the discretion of the district court. *See United States v. Talley*, 164 F.3d 989, 1001 (6th Cir.1999), *cert. denied*, 526 U.S. 1137, 119 S.Ct. 1793, 143 L.Ed.2d 1020 (1999); *United States v. Sanchez*, 74 F.3d 562, 564 (5th Cir.1996); *United States v. Childress*, 58 F.3d 693, 705 (D.C.Cir.1995), *cert. denied*, 516 U.S. 1098, 116 S.Ct. 825, 133 L.Ed.2d 768 (1996). It is generally accepted that factors bearing on the propriety of an anonymous jury include the defendant's involvement in organized crime; his participation in a group with the capacity to harm jurors; whether the defendant has previously attempted to interfere with the judicial process; the severity of the punishment that the defendant would face if convicted; and whether publicity regarding the case presents the prospect that the jurors' names could become public and expose them to intimidation or harassment. *Sanchez*, 74 F.3d at 564, quoting *United States v. Krout*, 66 F.3d 1420, 1427 (5th Cir.1995), *cert. denied*, 516 U.S. 1136, 116 S.Ct. 963 (1996); *United States v. Darden*, 70 F.3d 1507, 1532–33 (8th Cir.1995), *cert. denied*, 517 U.S. 1149, 116 S.Ct. 1449, 134 L.Ed.2d 569 (1996); *United States v. Mansoori*, 304 F.3d 635, 650–51 (7th Cir.2002). However, as the Fifth Circuit explained in discussing these factors,

> We did not suggest [in *Krout*] that these or some aggregate [of them] must be established on pain of reversal. Rather, these are concerns commonly present in cases such as *Krout*, where courts have upheld the use of an anonymous jury. Other circumstances may also justify its use.... District courts should look to the "totality of the circumstances."

*United States v. Branch*, 91 F.3d 699, 724 (5th Cir.1996), *cert. denied*, 520 U.S. 1185, 117 S.Ct. 1466–67 (1997).

■ As the *Krout* factors suggest, the pardigmatic situation justifying an anonymous jury is an organized crime trial, where the safety of the jurors becomes an overriding concern. However, contrary to what Defendants suggest in their Motion, it is not only in organized crime trials or in other instances where the jurors' safety is jeopardized that the withholding of identifying juror information is appropriate. Even when safety is not an issue, when the case attracts unusually large media attention or arouses deep passions in the community, anonymous juries have been approved.

For example, the Fifth Circuit found no error in the district court's *sua sponte* decision to empanel an anonymous jury in *United States v. Branch, supra.* The district court there reasoned that an anonymous jury was appropriate because of the "enormous amount of world-wide media attention" generated by the case and the emotionally charged atmosphere surrounding it. Although the Fifth Circuit noted that "not all celebrated trials merit an anonymous jury," it found that because of the passions aroused by the case "[t]he prospect of publicity militate[d] in favor of jury anonymity to prevent exposure of the jurors to intimidation or harassment." *Id.* at 724–25.

Similarly, the Sixth Circuit found no error in the district court's decision to use an anonymous jury in *United States v. Dakota*, 197 F.3d 821 (6th Cir.1999), a bribery and tax fraud case where there was no threat of harm to the jurors. The case involved allegations of a kick-back scheme by a member of the Chippewa Indian tribe that operated a casino on the reservation and the principal owner of the company that leased gaming machines to the casino. The district court decided to empanel an anonymous jury "in order to minimize the prejudicial effects of pretrial publicity and

an emotional, political atmosphere that created a risk of jury intimidation and improper influence." 197 F.3d at 827. The Court of Appeals found no error in the district court's decision, explaining:

> The district court created a solution to remedy the concern about potential juror intimidation which avoided possible juror bias, and it did not abuse its discretion in doing so.

*Id.*

The Second Circuit likewise approved the use of an anonymous jury again where there was no issue of threat of safety to jurors in *United States v. Vario,* 943 F.2d 236 (2nd Cir.1991), *cert. denied,* 502 U.S. 1036, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992). That case involved a conspiracy charge which allegedly affected all of the construction industry on Long Island. The Government in that case moved for an anonymous jury after *New York Newsday* published a cover story about the case detailing the extensive nature of the conspiracy charged. In affirming the district court's grant of the Government's motion, the Second Circuit stated:

> Although no publicity followed this initial article, we cannot say that at the time that the anonymous jury motion was made, the government's prediction that publicity would continue was unreasonable or unjustified. While later developments may have proved this prediction wrong, we cannot say, viewing the situation as it was then presented to the trial judge, that there were insufficient grounds to believe that this case

warranted the use of an anonymous jury.

943 F.2d at 240.

As in the above-cases, this case has generated a great deal of media attention.[1] Furthermore, since September 11, 2001, emotions of the public run high with the mere mention of allegations of "terrorism" in this country. Given this emotionally-charged atmosphere and the heightened level of media attention, the potential for juror harassment is increased. Because of these conditions, the Court finds that, notwithstanding Defendants' objections, an anonymous jury is warranted.

In addition, although the Court does not believe the safety of the jurors is directly implicated by virtue of their service on this jury, given the nature of the charges and the high emotions such a case raises, the Court cannot, of course, give an absolute guaranty that juror safety is not a factor of which the Court must be cognizant. In this context, it bears observation that the U.S. Marshal has recommended to the Court that the jury empaneled for this case remain anonymous. Like the Court, the Marshal noted in the "Operational Plan" concerning this case that "[m]edia attention for this trial will be high because of the connection to terrorism." [*See* Operational Plan, Case Overview and Part II, Section 3, Jury Team Instructions.][2]

Furthermore, as was the case in *United States v. Branch,* Defendants are unable to establish that refusing to release the names, addresses, or places of employment of prospective jurors prejudices their ability to select an impartial jury. As in

---

1. In addition to the large number of print and broadcast media reports concerning this case that have already been reported, as of this date the Court has already received 47 requests for media credentials for the trial.

2. The Court's decision to protect the identity of jurors is further sanctioned by the jury selection plan adopted in this District. The

Eastern District of Michigan Jury Selection Plan provides in pertinent part that "Any district judge may order the names [of jurors] to be kept confidential in any case when the interests of justice so require." [*See* United States District Court, Eastern District of Michigan Jury Selection Plan, § (*o*)(5) (adopted December 5, 2000).

*Branch,* the Court here furnished the Defendants with copies of the extensive juror questionnaires which provided Defendants with each prospective juror's answers to 103 detailed questions. Where defendants have been provided a wealth of information concerning prospective jurors by way of answers to extensive jury questionnaires, courts have routinely upheld the use of an anonymous jury. *See, e. g., United States v. Branch, supra; United States v. Childress, supra,* 58 F.3d at 704.

The Court also rejects Defendants' argument that the use of an anonymous jury in this case would undermine the presumption of their innocence. As the court in *United States v. Branch* explained in rejecting this same argument in that case:

> At heart, the Davidians' argument rests on a speculative inference that the jurors were more likely to render a guilty verdict because of their belief that the defendants were dangerous. Such speculation is unwarranted. Indeed, it may be that "[a] juror who fears a defendant's retaliation might be more apt to return a guilty verdict despite such fears rather than because of them. [Citation omitted.] In any event, the district court instructed the jury regarding the non-defendant-related need for anonymity and the presumption of innocence. Moreover, at voir dire, Judge Smith explained his decision to use an anonymous jury because of the public attention surrounding the case.

*Id.* See also *United States v. Talley, supra,* in which the Sixth Circuit found no error in the district court's decision to empanel an anonymous jury where the district court explained to the jury during voir dire:

> This case is one where there is likely to be a good bit... of media inter-

est[.][B]ecause it is important to all parties that there not be any media contact with jurors... until this case is over, we are using your juror numbers during this process and at all times do not give me your names, do not give the parties your names, but always when you are addressing the court refer to your juror number. *We do this for your benefit to make sure... that you are not bothered or approached by any media about this case or any aspect of it.*

164 F.3d at 1002 n. 7.

As in *Branch* and *Talley,* the Court here informed the jurors that an anonymous jury would be empaneled for this case because of the public attention surrounding the case. The Court specifically explained to jurors on February 21, 2003 that

> ... [T]he jury will be chosen anonymously ... to assure the privacy of jurors and assure that the privacy can be preserved throughout trial and that you are not contacted by the press or anyone else who may be curious about the case and want to talk to you about it....
> ... [T]his is not being done because we are concerned that you are in any jeopardy. Your safety isn't in any jeopardy at all....
> ... As I told you, this is for your own privacy rights so that people will not be tempted to talk to you about the case. Our goal in impaneling [sic] an anonymous jury is to protect your privacy and your ability to decide this case without any external influences brought to bear upon you.

[2/21/03 Tr. pp. 12–13, 24–25.]

Furthermore, the Court has already preliminarily advised the jurors about the presumption of innocence,[3] and they will

---

3. In the Court's remarks to jurors on February 21, 2003 before they filled out the jury questionnaires, the Court stated:

> [T]he presumption of innocence [is something] the law gives to each and every one of these defendants, indeed, every person

be again specifically instructed that the Defendants are presumed innocent once a jury is selected and trial commences. Under these circumstances, Defendants cannot complain that the anonymity of the jury undermines the presumption of their innocence. *See United States v. Childress, supra,* 58 F.3d at 704 (judge's statements downplaying the significance of anonymity and stressing its irrelevance to the guilt or innocence of defendants held appropriate precautions to minimize any prejudice that might have resulted from the way the jury was empaneled); *United States v. Ross,* 33 F.3d 1507, 1521–22 n. 27 (11th Cir.1994), *cert. denied,* 515 U.S. 1132, 115 S.Ct. 2558, 132 L.Ed.2d 812 (1995) (approving similar combination of downplaying safeguards and highlighting presumption of innocence); *United States v. Crockett,* 979 F.2d 1204, 1216–17 (7th Cir.1992), *cert. denied,* 507 U.S. 998, 113 S.Ct. 1617, 123 L.Ed.2d 176 (1993) (same); *United States v. Tutino,* 883 F.2d 1125, 1133 (2nd Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990) (same).

Finally, in the context of protecting Defendants' right to a fair trial, as the Court explained to counsel on February 21, 2003, it believes that an anonymous jury actually may aid in ensuring Defendants a fair trial because jurors who have the protection of anonymity can more confidently render a verdict without fear of reprisal or negative repercussions if the verdict rendered is an unpopular one. In a case such as this—the first post-September 11 case presenting charges related to international terrorism—with many people anxious about the threat of terrorism, the Court is confident

that jurors who serve anonymously will be better able to fairly and dispassionately weigh the evidence and follow it to an impartial decision, unperturbed by the personal consequences of rendering an unpopular or controversial verdict.

For all of these reasons, the Court finds that the empaneling of an anonymous jury will not violate Defendants' right to a fair trial.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court overrules Defendants' objections to the empaneling of an anonymous jury. Accordingly,

IT IS HEREBY ORDERED that Defendants' Motion Opposing the Empaneling of an Anonymous Jury is DENIED.

who is charged in a criminal case, whether in state or federal court. The presumption of innocence is one that stays with a defendant through the entire trial of a case unless and until the jury finds in accordance with the law that I will instruct you on that each and every element has been proved beyond a reasonable doubt by the govern-

ment as to one or more of the defendants in this case. . . .

. . . These defendants have the presumption of innocence, and the presumption of innocence is one of the cornerstones of our constitutional rights in this country.
[2/21/03 Tr. pp. 7–8.]