# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2685

_____

United States of America,      *
     *
         Appellee,      *
     *   Appeal from the United States
     v.      *   District Court for the
     *   Eastern District of Missouri.
Curley Hines,      *
     *
         Appellant.      *

_____

Submitted:  March 13, 2008
Filed:  September 8, 2008

_____

Before WOLLMAN, HANSEN, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Curley Hines, a deputy sheriff in St. Louis County, Missouri, was convicted on ten counts of accepting bribes in violation of 18 U.S.C. § 666(a)(1)(B), one count of aiding another deputy to do the same, and one count of conspiracy. He was sentenced by the district court[1] to 33 months' imprisonment and now appeals, raising three issues: that a violation of § 666 requires a nexus between the federal funds and the offense charged; that the transactions charged within each count did not reach the

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

minimum amount required under the statute; and that his conspiracy conviction violated Wharton's Rule. We affirm.

## I. Background

The jury found that Hines, an execution deputy whose official duties included enforcing court orders of evictions and collecting or seizing property in execution of court judgments, was involved in a longstanding practice among the execution deputies in the St. Louis County Sheriff's Office of accepting small cash payments from various moving companies and property owners for the deputies' performance of their eviction-related duties. The owner of one moving company testified that his business had made payments to Hines for more than twenty years; another testified that his business made payments in the amount of ten percent of his invoice for each eviction. Representatives of a real estate firm testified that the firm paid Hines $100 for each eviction he performed for it. The payments were made to facilitate the deputies' timely and cooperative performance of their duties, which included scheduling the evictions and providing the color of authority at the eviction site.

## II. Analysis

Section 666 of Title 18 of the United States Code sets forth the circumstances that must exist to form the basis of a charge of theft or bribery concerning programs receiving federal funds. One of these circumstances is that the organization, government, or agency receive benefits in excess of $10,000 under the federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of federal assistance. 18 U.S.C. § 666(b). The record reveals that the jurisdictional amount was satisfied for each of the years covered by the indictment.

A.

Hines argues that the government failed to establish a nexus between the federal funds establishing jurisdiction under § 666(b) and the activity for which he was indicted under § 666(a). We rejected a similar contention in United States v. Sabri, 326 F.3d 937 (8th Cir. 2003), a position that the Supreme Court affirmed in Sabri v. United States, 541 U.S. 600 (2004). Reviewing a facial challenge to § 666 on the basis that it failed to require such a nexus, the Supreme Court "readily dispose[d] of this position that, to qualify as a valid exercise of Article I power, the statute must require proof of connection with federal money as an element of the offense." Sabri, 541 U.S. at 605. Instead, the Court stated that Congress's inclusion of jurisdictional amounts creates a sufficient nexus to constitute a valid enactment under the Necessary and Proper Clause. Id. at. at 605-06.

The facts in Sabri arguably evidenced a connection between federal funds and the defendant's criminal activities, as Sabri had bribed a city councilman who was in a position to administer funds and whose agencies received federal funds. Hines thus raises an as-applied challenge, contesting the rationality of applying § 666 to him in particular. He argues that he was not entrusted with the disbursements of any money, federal or otherwise; his dealings were purely local and could not jeopardize in any significant manner the integrity of federal programs; and the federal monies given to St. Louis County did not reach his department.

Hines's as-applied challenge fails, for the plain language of the statute does not require, as an element to be proved beyond a reasonable doubt, a nexus between the activity that constitutes a violation and federal funds. See Sabri, 326 F.3d at 940-45. The Supreme Court upheld our interpretation of § 666 as Congress's attempt to preserve the integrity of federal funds by lessening the burden of federal prosecutors to prove what may be an impossible-to-trace, but very real, impact of local corruption on federal funds. See Sabri, 541 U.S. at 606-07. That legitimate purpose and

Congress's rational means of achieving it by eschewing a nexus requirement in the offense would be undermined if defendants such as Hines could require the government to establish such a nexus. See Gonzales v. Raich, 545 U.S. 1, 3 (2005) (stating, in the context of legislation enacted pursuant to the Commerce Clause, that "where the class of activities is regulated and that class is within the reach of federal power, the courts have no power to excise, as trivial, individual instances of the class" (internal quotation and alteration omitted)). Thus, we reiterate our position on this issue and also point to those post-Sabri decisions that have declined to require any connection between federal funds and the activity that constitutes a violation of § 666. See, e.g., United States v. Caro-Muniz, 406 F.3d 22 (1st Cir. 2005); United States v. Kranovich, 401 F.3d 1107 (9th Cir. 2005); United States v. Spano, 401 F.3d 837 (7th Cir. 2005); United States v. Mirikitani, 380 F.3d 1223 (9th Cir. 2004).

B.

Hines also argues that the evidence is insufficient to show that the minimum jurisdictional amount required by § 666 was met for each count of his conviction. The relevant language of that statute provides that an agent of a state or local government violates the statute if he

> corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded *in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more . . . .*

§ 666(a)(1)(B) (emphasis added).

Hines argues that the "thing of value" must be worth $5,000 or more to either the briber or the bribee, and thus the money judgments and foreclosed property values should not be considered in calculating that value. Our decision in United States v.

-4-

Zimmerman, 509 F.3d 920, 926 (8th Cir. 2007), forecloses that contention. The plain language of the statute does not require a restricted, technical interpretation that would prevent the consideration of the "thing's" value to other parties with an immediate interest in the transaction.

The relevant jury instruction identified the "judgment(s) or order(s) of eviction" as the transaction to be considered and permitted the jury to "consider the value to St. Louis County or to the private entities or individuals or both." The bribery payments were made in order to effectuate Hines's and his colleagues' timely performance of their official duties involving court orders of eviction. The evidence adduced at trial showed that these orders of eviction and their associated money judgments were worth substantial amounts of money to the property owners and landlords to whom they were awarded. One of the property owners involved and at least two lawyers experienced in landlord-tenant issues testified that a landlord or property owner loses a substantial amount in market value, rent and mortgage payments, and/or property damage every day a defaulting tenant or mortgagee is in possession of the property. Thus, those losses grow ever larger in the absence of the timely cooperation of the execution deputies in enforcing the eviction notices obtained as the result of the nonpayment of rental and mortgage obligations. Without recounting the details of the monetary value of the eviction transactions, we agree with the government that its evidence satisfied the $5,000 threshold in each of the charged counts.

For the first time on appeal, Hines argues that the government's indictment failed to use the correct units of prosecution for each count. Specifically, he argues that the government should not be permitted to aggregate multiple payments within a single count unless the count includes all such charged transactions within the defendant's scheme. We reject this contention and hold that § 666 that permits the government to aggregate multiple transactions in single count to reach the $5,000 minimum as long as they were part of a single plan or scheme. See, e.g., United States v. Cruzado-Laureano, 404 F.3d 470, 484 (1st Cir. 2005) (permitting aggregation in the

context of § 666(a)(1)(A), the "theft" prong of the statute); <u>United States v. Yashar</u>, 166 F.3d 873, 876 (7th Cir. 1999); <u>United States v. Valentine</u>, 63 F.3d 459, 466 (6th Cir. 1995). The series of transactions so charged must fall within a one-year period wherein the government agency or organization received $10,000 or more in federal funds. <u>See</u> 18 U.S.C. § 666(d)(5); <u>Valentine</u>, 63 F.3d at 463. Significant longstanding schemes that extend for longer than one year, such as the one that took place in the St. Louis County Sheriff's Office, may be charged in multiple counts so long as the $5,000 requirement is met in each one-year time period. In this case, each count aggregated the transactions that took place in a single day.

Although Hines argues that the government's indictment in this case is multiplicitous, and thus arbitrarily divides a single crime into multiple counts, we express no opinion with respect to the issue because Hines failed to object to the indictment and was not prejudiced by any error. The danger of multiplicitous indictments is that the defendant may be exposed to multiple sentences for a single crime. Because Hines's sentences run concurrently, however, the length of his imprisonment was not increased by any multiplicitous convictions. <u>See</u> <u>United States v. Lemons</u>, 941 F.2d 309, 319 (5th Cir. 1991) ("Even if a defendant waives his right to assert a multiplicity claim, he may still object to multiple sentences . . . but only if the sentences are not to be served concurrently." (internal quotations and alterations omitted)).

## C.

Hines argues that his conviction for the conspiracy count violates Wharton's Rule because he and the only other party to the agreement were briber and bribee. Because Hines did not raise this argument below, our review of this issue is for plain error only.

We conclude that Wharton's Rule does not apply in this case. Wharton's Rule, which operates as a narrow exception to the general principle that a conspiracy and its underlying substantive offense do not merge, applies when there is a "general congruence of the [conspiracy] agreement and the completed substantive offense." Iannelli v. United States, 420 U.S. 770, 781-82. This "general congruence" exists when "[t]he parties to the agreement are the only persons who participate in commission of the substantive offense, . . . the immediate consequences of the crime rest on the parties themselves rather than on society at large," and when "the agreement that attends the substantive offense does not appear likely to pose the distinct kinds of threats to society that the law of conspiracy seeks to avert." Id. at 782-83. The purpose of § 666, to protect the integrity of federal funds, indicates that "the immediate consequences" of the behavior it proscribes rest on society at large. Furthermore, the behavior implicated in this case was self-perpetuating in the way of a conspiracy and implicated more entities than just those who exchanged money. The underlying offense of bribery was part of a coercive system on the part of the deputies of St. Louis County to implicate movers and property owners who sought to enforce their evictions.

The judgment is affirmed.

_____