# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-1515
_____

United States of America

*Plaintiff - Appellee*

v.

Kwame Ali Askia

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - El Dorado
_____

Submitted: April 12, 2018
Filed: June 29, 2018
_____

Before GRUENDER, MELLOY, and GRASZ, Circuit Judges.
_____

MELLOY, Circuit Judge.

Kwame Ali Askia managed an organization that received federal grant funds to subsidize an after-school program for children. After misappropriating over $5,000 of those funds for personal expenditures, Askia was charged on March 6, 2013, with theft concerning programs receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(A). Askia moved to dismiss the indictment, arguing that it violated the applicable statute of limitations. Specifically, Askia claimed that the five-year statute

of limitations barred his indictment for offenses committed before March 6, 2008, and that his crime was committed before that date. In fact, and complicating the issue, Askia's alleged criminal conduct straddled this limitations bar; the indictment charged criminal conduct from August 23, 2007, to April 11, 2008. The district court[1] denied Askia's motion, concluding that the offense was a "continuing offense," meaning the crime was not committed until the last date charged in the indictment, and thus the indictment was timely. The district court alternatively held that, even assuming the offense was not a continuing offense and Askia had committed an offense before the limitations bar, the indictment charged a separate § 666(a)(1)(A) offense *within* the limitations period. The case proceeded to trial, and a jury returned a guilty verdict.

On appeal, Askia raises several questions, including one of first impression in this circuit: When an offense prohibits unlawfully taking at least $5,000 from an organization receiving federal funds, is that crime "committed" once all elements are established or is the crime continually committed over time?

I.

The United States government, through a grant program known as the "21st Century Community Learning Centers," provides grant money to subsidize community learning centers, typically for children attending high-poverty, low-performing schools. The Arkansas Department of Education received grant funds from the 21st Century program and then awarded grants to approved entities.

Askia, the owner of Askia Learning Concepts, submitted an application on behalf of Askia Learning for a 21st Century grant. The application sought a grant in order to establish a community learning center in Arkansas during the 2007–2008

---

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas, adopting the report and recommendations of the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas.

school year. The application was approved, and Askia Learning received a grant for $149,280, the full amount requested in the application.

On November 1, 2007, Arkansas Department officials visited Askia Learning's location and discovered several compliance issues. Based on these issues, the Department ordered Askia Learning to cease spending grant funds and to send the Department a current expenditure report with supporting documentation. Department officials then held several meetings with Askia, repeatedly requested documentation, and continually ordered Askia to stop spending grant funds. Askia neither supplied the requested documentation nor stopped spending grant funds. On March 27, 2008, the Department sent Askia Learning a letter, terminating the 21st Century grant based on Askia Learning's failure to comply with grant requirements and demanding repayment of most of the grant. After investigating Askia Learning and Askia, the Government identified numerous expenditures where he allegedly misappropriated grant funds for personal expenditures.

On March 6, 2013, more than five years after Askia Learning received the 21st Century grant, a one-count indictment was returned, charging Askia with a violation of 18 U.S.C. § 666(a)(1)(A). The indictment specifically charged:

> From on or about August 23, 2007, to on or about April 11, 2008, in the Western District of Arkansas, El Dorado Division, the defendant, **KWAME ALI ASKIA**, being an agent of, Askia Learning Concepts, a for profit organization, said organization receiving in the one year period beginning August 23, 2007, benefits in excess of $10,000 under a 21st Century Community Learning Centers Grant, embezzled, stole, without authority knowingly converted, obtained by fraud, and intentionally misapplied property worth at least $5,000 and owned by and under the care, custody and control of Askia Learning Concepts, that is, grant funds provided for educational services to Strong High School, Strong, Arkansas, in violation of 18 U.S.C. § 666(a)(1)(A).

Askia moved to dismiss the indictment, arguing that the applicable five-year statute of limitations barred his indictment for offenses committed before March 6, 2008. This date landed toward the end of the timeline charged in the indictment (i.e., August 23, 2007, to April 11, 2008). At a hearing on the motion, the Government offered proof of seventeen supposedly personal expenditures, including at least four occurring after March 6, 2008. These four expenditures totaled $5,503.36.

The district court denied Askia's motion to dismiss, for two reasons. First, the court concluded that § 666(a)(1)(A) was a "continuing offense" and thus the statute of limitations did not begin to run until the last date charged, i.e., April 11, 2008, placing the indictment within the limitations period. Second, even assuming § 666(a)(1)(A) was a completed offense and thus the statute of limitations began to run once all elements of the offense were established, the court concluded that the four expenditures after March 6, 2008, established a separate offense within the limitations period.

The case proceeded to trial, where Askia represented himself *pro se* with standby counsel. Notwithstanding the district court's earlier alternative ruling that the indictment charged an offense committed after March 6, 2008, Askia did not challenge the Government's evidence of expenditures before March 6. Askia also did not request a jury instruction or a special verdict form as to the dates of his alleged misappropriations. A jury then returned a guilty verdict. The sentencing court sentenced Askia to twenty-four months of imprisonment, to be followed by thirty-six months of supervised release, and ordered $148,416 in restitution. Askia timely appealed.

II.

On appeal, Askia raises four challenges regarding: (A) the statute of limitations, (B) evidentiary issues, (C) his due-process rights, and (D) the sufficiency of the evidence.

A.

Askia first asserts that the applicable statute of limitations barred the indictment charging him with violating 18 U.S.C. § 666(a)(1)(A). "This court reviews de novo the denial of a motion to dismiss the indictment." United States v. Howell, 531 F.3d 621, 622 (8th Cir. 2008).

A statute of limitations for an offense typically begins to run once it is complete—in other words, once all elements of the offense are established. See Toussie v. United States, 397 U.S. 112, 115 (1970); id. at 124 (White, J., dissenting). Larceny is an easy example. A larceny occurs when a person wrongfully or fraudulently takes another's property without her permission or consent, and with the intent to permanently deprive the owner of that property. The crime is committed and complete once the last of these elements has occurred. That point in time thus starts the clock for a statute of limitations. See United States v. McGoff, 831 F.2d 1071, 1078 (D.C. Cir. 1987).

There is an exception to this general rule, however, for a "continuing offense." A continuing offense is, simply put, a single crime that continues over time. See Toussie, 397 U.S. at 119; United States v. Yashar, 166 F.3d 873, 875 (7th Cir. 1999); McGoff, 831 F.2d at 1078. "[E]ven after the elements necessary to establish the crime have occurred," Yashar, 166 F.3d at 875, the same crime is continuously or continually committed over time. Toussie, 397 U.S. at 119–20. A statute of

limitations for a continuing offense thus does not start until the offense "expires." Conspiracy is a classic continuing offense. The statute of limitations for a conspiracy does not start until the conspiracy expires—for example, when either the conspiracy's unlawful purpose is accomplished or the relevant conspirator withdraws from the conspiracy. See Ashraf v. Lynch, 819 F.3d 1051, 1053 (8th Cir. 2016).

The Supreme Court in Toussie v. United States formulated two prongs for identifying a continuing offense. 397 U.S. at 115. An offense is continuous if either "the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." Id. The Government concedes that § 666(a)(1)(A) is not a continuing offense under the first prong, but contends that the offense is a continuing offense under the second prong.[2]

The Supreme Court has cautioned courts to apply the continuing-offense doctrine infrequently. "The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." Id. at 114. This "limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." Id. at 114–15. Based on these principles, "[t]he tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical

---

[2]Yet the Government has conceded in other cases that § 666(a)(1)(A) is not a continuing offense under either prong. See, e.g., Yashar, 166 F.3d at 876 ("[T]he government agree[s] that § 666 is not a 'continuing offense' as that term is defined in Toussie.").

purposes, extends the statute beyond its stated term." Id. at 115 (alteration in original) (citation omitted). "[T]he doctrine of continuing offenses [therefore] should be applied in only limited circumstances . . . ." Id.

To determine whether an offense is a continuing offense, a court must analyze the language and elements of the offense, rather than the facts alleged or the charge itself. See id. at 116–20 (examining the text and legislative history of the offense); Yashar, 166 F.3d at 877 ("[T]he active or passive nature of a defendant's actions has never been the benchmark of a continuing offense under Toussie. Instead, the focus is on the statutory language."); United States v. Jaynes, 75 F.3d 1493, 1506 (10th Cir. 1996) ("[A] continuing offense is not the same as a scheme or pattern of illegal conduct."); United States v. Niven, 952 F.2d 289, 293 (9th Cir. 1991) (per curiam) ("As [Toussie] makes clear, the analysis turns on the nature of the substantive offense, not on the specific characteristics of the conduct in the case at issue."), overruled in part on other grounds by United States v. Scarano, 76 F.3d 1471, 1474–77 (9th Cir. 1996); McGoff, 831 F.2d at 1077–78. We thus start with the text of the offense.

Here, Askia was charged with violating 18 U.S.C. § 666(a)(1)(A), which prohibits unlawfully taking property from an organization receiving federal funds:

> (a) Whoever, if the circumstance described in subsection (b) of this section exists—(1) being an agent of an organization . . . (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—(i) is valued at $5,000 or more, and (ii) is owned by, or is under the care, custody, or control of such organization . . . shall be fined under this title, imprisoned not more than 10 years, or both.

Subsection (b), in turn, limits the offense's scope to an agent of an organization (or of certain governmental bodies) that "receives, in any one year period, benefits in

excess of $10,000 under a Federal program involving a grant." 18 U.S.C. § 666(b). The statute of limitations for this offense is five years. Id. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.").

The issue of whether § 666(a)(1)(A) is a continuing offense is an issue of first impression in this circuit. Although larceny might be an easy example and although embezzlement is similar to larceny, there is a partial circuit split on the issue of whether an embezzlement-type offense is a continuing offense.

The Seventh Circuit in United States v. Yashar held that § 666(a)(1)(A) is not a continuing offense and "the offense is committed and the limitations period begins to run once all elements of the offense are established, regardless of whether the defendant continues to engage in criminal conduct." 166 F.3d at 879–80. Several district courts have held similarly. See, e.g., United States v. Sunia, 643 F. Supp. 2d 51, 72–75 (D.D.C. 2009); United States v. Donehue, No. C 07-00380 SI, 2008 WL 1900992, at *2 (N.D. Cal. Apr. 28, 2008); cf. United States v. Johnson, 145 F. Supp. 3d 862, 871 (D.S.D. 2015) (holding that "embezzlement under 18 U.S.C. § 656 is not a continuing offense"); United States v. Jones, 676 F. Supp. 2d 500, 518 (W.D. Tex. 2009) (holding that bribery under 18 U.S.C. § 666(a)(1)(B) is not a continuing offense). But see United States v. Shoemaker, No. 2:11-CR-00038-NBB-DAS, 2012 WL 313620, at *1–2 (N.D. Miss. Feb. 1, 2012) (holding that § 666 is a continuing offense, despite the government conceding "that a Section 666 offense is not a continuing offense").

The Fourth Circuit in United States v. Smith analyzed a similar embezzlement-type statute, 18 U.S.C. § 641,[3] and held that it was a continuing offense. 373 F.3d 561, 567–68 (4th Cir. 2004) (per curiam). There, the defendant had arranged for his mother's Social Security benefits to be automatically deposited in his and his mother's joint account each month, and the defendant continued receiving and spending benefits after his mother died. Id. at 563. The Fourth Circuit held that § 641 was a continuing offense because the scheme involved a "recurring, automatic scheme of embezzlement." Id. at 567. In so holding, the court analyzed not only the language and elements of the offense, but also the facts and circumstances alleged, which is contrary to our conclusion above that a court must analyze the language and elements of the offense.

We agree with the Seventh Circuit and hold that 18 U.S.C. § 666(a)(1)(A) is not a continuing offense. We reach this conclusion for at least four reasons.

---

[3]Section 641 is analogous in all relevant respects here to § 666(a)(1)(A). See Sunia, 643 F. Supp. 2d at 73. Each offense prohibits unlawfully taking property; the offenses differ merely based on the lawful owner or possessor of the property and the property's value. Section 641 specifically provides:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

To start, a § 666(a)(1)(A) offense is completed once each element of the offense has occurred. A defendant's "instantaneous events," Toussie, 397 U.S. at 122—embezzling or stealing property from an organization receiving federal grant funds—complete the crime. As noted above, it is well established that offenses such as stealing, theft, and larceny are completed offenses. See McGoff, 831 F.2d at 1078 ("[A] larceny is completed as soon as there has been an actual taking of the property of another without consent, with the intent permanently to deprive the owner of its use. The offense does not 'continue' over time."). Section 666(a)(1)(A) proscribes those actions, in addition to embezzlement-type actions. But embezzlement is merely a larceny from a position of trust. Even the Fourth Circuit in Smith recognized that embezzlement "differs from larceny [only] in the fact that the original taking of the property was lawful, or with the consent of the owner." 373 F.3d at 564. That distinction, however, does not transform embezzlement into an offense that continues over time. See Toussie, 397 U.S. at 136 ("[T]he unlawful course of conduct [for a continuing offense] is 'set on foot by a single impulse and operated by an unintermittent force,' until the ultimate illegal objective is finally attained." (citation omitted)); United States v. Morales, 11 F.3d 915, 921 (9th Cir. 1993) (O'Scannlain, J., concurring in part and dissenting in part). Embezzlement, like larceny, is completed with the unlawful taking.

Second, unlike well-established continuing offenses—such as conspiracy and unlawful possession—a § 666(a)(1)(A) offense "does not 'continue' over time." McGoff, 831 F.2d at 1078. Once the elements are established—i.e., an agent of an organization, which receives certain federal funds, unlawfully takes at least $5,000 from the organization—the crime is complete. It is not then continuously or continually committed over time, as is the case with conspiracy. See Toussie, 397 U.S. at 122; Yashar, 166 F.3d at 875. Although the harm to the victim might continue, the crime does not.

Our holding is supported also by the principle that continuing "offenses are not to be implied except in limited circumstances." Toussie, 397 U.S. at 121; id. at 115 (reaffirming "the principle that criminal limitations statutes are 'to be liberally interpreted in favor of repose'" (quoting United States v. Scharton, 285 U.S. 518, 522 (1932))). The Supreme Court in Toussie declared that "the doctrine of continuing offenses should be applied in only limited circumstances since . . . '[t]he tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term.'" Id. at 115 (alteration in original) (citation omitted). That principle governs here where Congress neither expressly declared that § 666(a)(1)(A) is continuing offense, nor clearly implied as such when prescribing the nature of the offense. Congress's inaction is particularly telling as larceny-type offenses long have been understood as generic, non-continuing offenses. See id. at 120.

Finally, the rationales undergirding the statute of limitations further support finding that § 666(a)(1)(A) is not a continuing offense. As noted above, this legislatively prescribed limitation not only encourages timely prosecutions when the facts are fresh and recollections collected, but also discourages prosecutions for "acts in the far-distant past." Id. at 114–15. Those rationales militate against concluding that § 666(a)(1)(A) is a continuing offense, where the statute of limitations gave the Government five years to seek an indictment for the offense, yet the Government failed to obtain an indictment until more than five years after initially discovering Askia's misconduct.

We therefore hold that 18 U.S.C. § 666(a)(1)(A) is not a continuing offense. As such, a defendant may not be charged for a § 666(a)(1)(A) offense committed outside the five-year statute of limitations. See 18 U.S.C. § 3282(a).

-11-

The question remains, however, whether a defendant may be charged for a § 666(a)(1)(A) violation when the charged conduct falls both outside and within the limitations period. To prove a § 666(a)(1)(A) offense, the government must show in part that the defendant stole at least $5,000. To establish this element, the government sometimes may aggregate multiple thefts to satisfy the $5,000 jurisdictional minimum. See United States v. Hines, 541 F.3d 833, 837 (8th Cir. 2008) (holding that § 666 "permits the government to aggregate multiple transactions in a single count to reach the $5,000 minimum as long as they were part of a single plan or scheme"). An issue thus arises—as it does here—when the aggregated thefts straddle the limitations bar.

The Seventh Circuit in Yashar implied that a § 666(a)(1)(A) offense *outside* the limitations period absolves future § 666(a)(1)(A) offenses committed *within* the limitations period. See 166 F.3d at 879–80 ("[W]e hold that for offenses that are not continuing offenses under Toussie, the offense is committed and the limitations period begins to run once all elements of the offense are established, *regardless of whether the defendant continues to engage in criminal conduct.*" (emphasis added)). The Yashar court thus remanded to the district court to determine whether "all elements of the crime were met [outside the limitations period], such that the government could have proceeded with criminal charges prior to that date"; if so, "then the indictment in th[e] case was not timely." Id. at 880.

We disagree with that position. If, as we have decided, each § 666(a)(1)(A) violation is a separate criminal offense, and not a continuing violation, we see no reason why those violations that occurred within the statute of limitations cannot be prosecuted. We see nothing in criminal law that would prevent the prosecution of an individual who commits a series of thefts or embezzlements (which, by their nature, are crimes of concealment) over a number of years from being prosecuted for those crimes that occurred within the limitations period, just because a few of the embezzlements or thefts occurred outside the five years. The government is precluded

-12-

from prosecuting the violations committed more than five years prior to the date of the indictment, but, would be free to charge and prosecute any § 666(a)(1)(A) violations committed within the limitations period.

At the motion-to-dismiss hearing here, the Government introduced evidence of seventeen supposedly personal expenditures. The district court found that four of those expenditures occurred within the limitations period and equaled over $5,000. Those four expenditures independently supported a separate § 666(a)(1)(A) offense, and nothing could bar the Government from charging those expenditures as a § 666(a)(1)(A) violation. See Smith, 373 F.3d at 570 (Michael, J., dissenting) ("The record indicates that some of [the defendant]'s conduct [allegedly in violation of § 641] occurred within the applicable limitations period . . . . The government would be able to obtain a superseding indictment charging that conduct."); Jaynes, 75 F.3d at 1507 ("[The defendant] could be convicted of the offenses charged in counts one and two if she forged or passed any Treasury checks within five years of the date of the indictment, even if some of the alleged acts of forgery and passing forged checks would be barred by the statute of limitations."); Morales, 11 F.3d at 922 (O'Scannlain, J., concurring in part and dissenting in part) ("When an official engages in an ongoing pattern of seeking and receiving bribes from a single source . . . that does not mean that he is guilty of a 'continuing' violation . . . (or, for that matter, a series of such 'continuing' violations). Instead, [the defendant] could have been charged for each discrete, individual . . . violation he committed . . . ."). The indictment did not specify the precise expenditures supporting the offense, and the four post-March 6 expenditures supported an offense committed within the limitations period. See United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir. 1993) ("An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted."). The district court therefore properly denied Askia's motion to dismiss the indictment.

Based on the district court's erroneous ruling that § 666(a)(1)(A) was a continuing offense, the Government at trial introduced evidence of Askia's personal expenditures outside the limitations period. The Government also introduced evidence of expenditures *within* the limitations period, totaling over $5,000. As noted above, at trial Askia did not challenge the evidence on the expenditures outside the limitations period through, for example, a motion *in limine*. Nor did he request a jury instruction or a special verdict form as to which expenditures (i.e., those pre- or post-March 6) supported his conviction. See Fed. R. Crim. P. 30–31. Now, however, Askia appears to contest the jury's consideration of the outside-the-limitations-period expenditures. Because Askia did not challenge this evidence at trial, we review the evidentiary challenge for plain error. See id. 52(b) (standard of review); United States v. Olano, 507 U.S. 725, 732 (1993). A court of appeals has the discretion to correct an error only if there is "an 'error' that is 'plain' and that 'affect[s] substantial rights.'" Olano, 507 U.S. at 732 (alteration in original). The court "should not exercise that discretion[, however,] unless the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (second alteration in original) (citation omitted).

Here, even assuming the admission of the pre-March 6 evidence was plain error, Askia has not shown that the supposed error seriously affects the fairness, integrity, or public reputation of judicial proceedings. See id. As discussed above, the jury received evidence of numerous expenditures within the limitations period that were allegedly for personal reasons and that these expenditures totaled over $5,000. Viewing the evidence in the light most favorable to the jury's verdict, these transactions established that Askia unlawfully took, for his own personal use, over $5,000 from Askia Learning. Because this evidence supports a finding that Askia

violated § 666(a)(1)(A) within the statute of limitations, the purported error did not seriously affect the judicial proceeding's fairness, integrity, or public reputation.[4]

B.

Askia next complains that the Government submitted, to the grand jury and at trial, a document falsely purporting to be Askia Learning's application for the 21st Century grant. The application admitted into evidence was marked as "Exhibit 4," and Askia contends that Exhibit 4 was not his *true* grant application.

Even assuming Askia properly objected to this evidence, he has not shown that the district court abused its discretion in admitting Exhibit 4 into evidence. See United States v. Big Eagle, 702 F.3d 1125, 1130 (8th Cir. 2013) (standard of review). The purported differences between Exhibit 4 and the document that Askia claimed to be his "true" application include omitted page numbers, date stamps, and an appendix, as well as different formatting. The most significant difference between the documents, it appears, is the documents' budgetary allocations (allocating the amounts that Askia Learning could spend on certain expenses). Askia has not shown, however, how those purported differences were relevant to the question at trial, i.e., whether Askia misappropriated federal grant funds for his personal expenditures. Askia therefore has not demonstrated that the district court abused its discretion in admitting Exhibit 4 into evidence.

---

[4]Askia also argues that the personal expenditures were withdrawals of personal funds he had commingled with the grant funds in Askia Learning's bank account. This circuit, however, has rejected the argument that the government must trace personal expenditures directly to federal grant funds when a defendant has commingled federal grant funds with his own personal funds. Hines, 541 F.3d at 836.

Moving on, Askia appears to argue that the Government violated his Sixth Amendment rights by not introducing into evidence the document he claims to be the *true* 21st Century grant application. He also suggests that the district court violated his rights by not *sua sponte* holding a hearing to determine which document was the real application. Askia nevertheless concedes there was no violation of Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). Although his arguments are not entirely clear, we conclude they are meritless. Askia had ample opportunities at trial to introduce his version of the application into evidence and to challenge the validity of Exhibit 4. His own failures did not create Sixth Amendment violations by the Government or the district court.

Finally, Askia contends that the district court should have dismissed the indictment because the Government gave the grand jury a copy of Exhibit 4 (before being marked as such). Askia did not file a motion to dismiss the indictment based on this supposedly false application. See Fed. R. Crim. P. 12(b)(3)(A)(v). Because Askia did not file such motion before trial, he must show good cause for this failure. See id. 12(c)(3); United States v. Green, 691 F.3d 960, 963 (8th Cir. 2012). He has not done so, and therefore his argument is untimely. See Fed. R. Crim. P. 12(c)(3).

C.

Askia next claims that his due-process rights under the Fourteenth Amendment were violated at a pretrial hearing because the Government presented hearsay evidence rather than giving Askia the opportunity to confront an adverse witness who was the source of that evidence. Specifically, after Askia allegedly violated conditions of his pretrial release, the Government petitioned to detain him pending

trial. At a hearing on that petition, the Government elicited testimony from a probation officer about the alleged pretrial violations, detailed in a "violation report." The testifying officer, however, had not prepared the report. The Government did not call as a witness the officer who actually had prepared the report. Askia contends that the Government's reliance on the hearsay testimony of the probation officer who had not prepared the violation report was a violation of Askia's due-process rights. For this contention, Askia relies on Morrisey v. Brewer, 408 U.S. 471, 477 (1972).

Even assuming there was such a violation, however, this issue is moot. Federal courts may adjudicate only "actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71 (2013). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." Id. at 72 (citation omitted). The resolution of the issue in this appeal—whether there was a violation of Askia's constitutional rights at the pretrial detention hearing—will have no direct consequence on Askia now. His pretrial detention has concluded (and he has already been released after serving his sentence). See United States v. Sanchez–Gomez, 138 S. Ct. 1532, 1540 (2018) (concluding that the defendants' challenges to their pretrial detentions were moot because they were "no longer in pretrial custody").

Relatedly, Askia argues that his pretrial detention hindered his and his stand-by counsel's abilities to obtain evidence, locate witnesses, and prepare for trial. In support of this argument, Askia relies primarily on Barker v. Wingo, 407 U.S. 514 (1972), which deals with the Sixth Amendment right to a speedy trial. Under Barker, a defendant must show "serious prejudice" resulting from a constitutional violation. Id. at 534. But Askia has not shown how he suffered serious prejudice here, besides his conclusory claim that his trial preparation was hindered. Askia also fails to

explain how his stand-by counsel—who claims to have met with Askia "daily"—was unable to pursue these possible sources of evidence.

## D.

Askia's last argument is that the evidence at trial was insufficient to support his conviction. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003). The evidence showed that Askia was an agent of Askia Learning; that, in a one-year period, Askia Learning received a federal grant valued over $10,000; that Askia deposited those grant funds into Askia Learning's account; that he withdrew funds several times for personal expenditures; and that these expenditures totaled at least $5,000. These facts more than sufficiently support Askia's conviction. See 18 U.S.C. § 666(a)(1)(A).[5]

## III.

The judgment of the district court is affirmed.[6]

_____

[5]Askia presents several other arguments on the above issues and others. We have reviewed these arguments and conclude they are meritless. See 8th Cir. Rule 47B.

[6]Askia's and the Government's motions to supplement the record are denied. The Government's motion to strike is dismissed as moot.