**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4220**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

PHYLLIS DOTY,

Defendant – Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  David A. Faber, Senior District Judge. (2:18-cr-00034-1)

Submitted:  March 11, 2020

Decided:  October 21, 2020

Before MOTZ, WYNN, and RICHARDSON, Circuit Judges.

Affirmed by unpublished opinion.  Judge Richardson wrote the opinion, in which Judge Motz and Judge Wynn joined.

James McCall Cagle, Charleston, West Virginia; Jeaneen J. Legato, LEGATO LAW, PLLC, Charleston, West Virginia; for Appellant.  Michael B. Stuart, United States Attorney, Erik S. Goes, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

RICHARDSON, Circuit Judge:

A jury convicted Defendant Phyllis Doty on eight counts of wire fraud, mail fraud, theft from a federally funded program, and aggravated identity theft. Doty argues that the charges against her are multiplicitous, duplicitous, and motivated by prosecutorial vindictiveness. But finding no error in the district court's rejection of these claims, we affirm.

I.  **Background**

From 1998 to 2013, Doty served as a curriculum director and from 2013 to 2016, as the school superintendent in Logan County, West Virginia. As superintendent, Doty was an agent of the Logan County Board of Education ("Board"), which annually received more than $10,000 a year in federal Title I grants.

In 2015, the FBI began to investigate the misuse of Logan County school funds. The investigation revealed that Doty had used school funds for personal purchases and had directed the Board to purchase Apple devices that Doty then gifted to family members or sold on eBay. The eBay account used to sell the devices, "jack1545," was registered to Doty's husband, Jack Doty, at the Dotys' home address and was linked to an email address that Doty shared with her husband. These eBay sales used a PayPal account that was also linked to Doty. Bank records confirmed the deposit of the PayPal transactions into the Dotys' joint bank account. In 2011, for instance, Doty used the Board's funds to buy ten iPods, seven of which she promptly sold on eBay.

In 2013, Doty again used the Board's money to buy Apple products for personal use and resale. In July 2013, Doty bought six iPads for $3,924. She stated on the requisition

form that five of the iPads were for "Board Members." J.A. 63. Apple shipped the iPads to the Board's address. Four of those iPads were then registered to Doty's family members. Then in December 2013, Doty again used money from the Board to buy $1,180 worth of iPods, claiming falsely that they were "for Christmas Choral Performance" and were to be given to school music teachers. J.A. 477–80. Instead, she gave three to family members for Christmas and sold another on eBay.

In 2015, Doty used Board funds totaling $6,800 to purchase items to supply and decorate her son's wedding. *See, e.g.*, J.A. 177−80. Doty falsely specified on the Board's requisition form that the items were for "Competitions" and that they were to be shipped to the middle school. The items remained unattended and boxed at the school until Doty retrieved them for the wedding.

A federal grand jury returned a five-count indictment against Doty in February 2018. That indictment included two wire-fraud counts, 18 U.S.C. § 1343, two counts of theft from programs receiving federal benefits, 18 U.S.C. § 666(a)(1)(A), and one mail-fraud count, 18 U.S.C. § 1341. After a flurry of motions, the district court granted Doty's motions to dismiss the two theft counts without prejudice because the conduct charged did not fall within a one-year period in which the school was alleged to have received more than $10,000 of federal benefits. J.A. 151–52.[1] The grand jury superseded the indictment

---

[1] The relevant portions of 18 U.S.C. § 666 read:
(a) Whoever, if the circumstance described in subsection (b) of this section exists—
      (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—
(Continued)

3

in July 2018 to correct the timing error, reinstate the theft counts, and add another wire-fraud count. As the investigation continued to reveal the extent of Doty's fraudulent conduct, the grand jury again superseded the indictment in August 2018 to add charges. In total, Doty was charged with four wire-fraud counts (Counts 1–3 and 7), one mail-fraud count (Count 6), two counts of theft from programs receiving federal benefits (Counts 4–5), and one count of aggravated identity theft (Count 8).

Doty entered a not-guilty plea and sought to dismiss the second superseding indictment for multiplicity, duplicity, and prosecutorial vindictiveness. The district court denied her motions, and the jury found Doty guilty on all eight counts. She was sentenced to 42 months' imprisonment for Counts 1–7 and a consecutive 24-month term for Count 8. The court also ordered Doty to pay $25,083.10 in restitution along with $800 of special assessments.

After trial, Doty moved for a judgment of acquittal or, in the alternative, a new trial, alleging prosecutorial vindictiveness, trial error, insufficient evidence, and other matters.

---

(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—
 (i) is valued at $5,000 or more, and
 (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; . . .
shall be fined under this title, imprisoned not more than 10 years, or both.
(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

She then moved to supplement her post-judgment motion based on newly discovered evidence—a recently conducted Board audit that covered her tenure as superintendent. The district court denied these motions in a memorandum opinion. *See* J.A. 334−56. After the district court entered judgment, Doty timely filed a notice of appeal. We have jurisdiction under 28 U.S.C. § 1291.

## II. Discussion

### A. Multiplicity

Doty first contends that the indictment should have been limited to one fraud count instead of multiple mail- and wire-fraud counts. Charging a single *offense* in multiple *counts* is multiplicitous. *See United States v. Goodine*, 400 F.3d 202, 207 (4th Cir. 2005). And the "'danger' of a multiplicitous indictment is that a defendant might thereby receive multiple punishments for the same crime." *Id.* We review this claim de novo. *See United States v. Stewart*, 256 F.3d 231, 247 (4th Cir. 2001).

Concerns about multiplicitous indictments find their roots in the Double Jeopardy Clause. *See* U.S. CONST. amend. V; *United States v. Schrader*, 675 F.3d 300, 313 (4th Cir. 2012). The Double Jeopardy Clause ensures that "[n]o person shall . . . be twice put in jeopardy" for the "*same offence*," U.S. CONST. amend. V (emphasis added), "not for the same conduct or actions," *Gamble v. United States*, 139 S. Ct. 1960, 1965 (2019). So to address Doty's argument, we must first identify what constitutes an offense. The Supreme Court has stated that "offence" originally meant "the Violation or Breaking of a Law," so an "offence is defined by a law." *Id*. (cleaned up). In our federal system, Congress possesses the power to define criminal offenses by statute. *See Whalen v. United States*,

445 U.S. 684, 689 & n.3 (1980) ("[W]ithin our federal constitutional framework the legislative power . . . to define criminal offenses . . . resides wholly with the Congress.").

The wire-fraud statute (much like the mail-fraud statute) makes it a crime for anyone "having devised or intending to devise any scheme or artifice to defraud" to "transmit[] or cause[] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice." 18 U.S.C. § 1343. The government must prove (1) that the defendant devised a scheme to defraud, and (2) that, to execute the scheme, the defendant transmitted any writing or signal by wire in interstate commerce. *United States v. Curry*, 461 F.3d 452, 457 (4th Cir. 2006). Mail fraud requires the same two elements— substituting use of the mail for use of a wire. *See* 18 U.S.C. § 1341; *Schmuck v. United States*, 489 U.S. 705, 721 (1989); *United States v. Godwin*, 272 F.3d 659, 666 (4th Cir. 2001).

We have explained that in a mail- or wire-fraud prosecution, "it is settled that each mailing or wire transmission in furtherance of the fraud scheme constitutes a separate offense, and it may be separately punished." *United States v. Jefferson*, 674 F.3d 332, 367 (4th Cir. 2012). This conclusion, we reasoned, complied with double-jeopardy principles because although multiple mail- or wire-fraud offenses charged in an indictment may arise from a single fraud scheme, each separate mailing or wiring is being punished, not the

6

overall scheme itself. *Id.* So long as multiple mailings or wirings occur, multiple counts for the same type of conduct may stand.[2]

The indictment here charges separate mail- and wire-fraud offenses based on each use of a wire or the mail by Doty. J.A. 163−65, 168−69. As a result, the multiple counts were not multiplicitous.[3]

## B.    Duplicity

Doty contends that her two government-theft offenses charged under § 666(a)(1)(A) are duplicitous. Charging multiple *offenses* in a single *count* is duplicitous. *United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993); *see also United States v. Stanley*, 597 F.2d 866, 871 (4th Cir. 1979) (Federal Rule of Criminal Procedure 8(a) requires a separate count

---

[2] Similarly, in *Ebeling v. Morgan*, the defendant was convicted of six counts of opening mail bags after opening six mail bags in succession. 237 U.S. 625, 627–28 (1915). The Court considered the language of the statute: "Whoever shall tear, cut, or otherwise injure any mail bag . . . with intent to rob or steal . . . shall be . . . imprisoned not more than three years." *Id.* at 629. This language, the Court held, dictated that each act of opening a mail bag could be the basis of a separate count. *Id.* For the "offense is complete" when each bag is cut. *Id.* The statute in *Ebeling*, like the mail- and wire-fraud statutes, criminalizes an individual action that completes the offense. And each action can be charged in a separate count.

[3] The well-known double-jeopardy-clause test derived from *Blockburger v. United States* prohibits punishing a defendant for "two distinct statutory" offenses unless "each provision requires proof of a fact which the other does not." 284 U.S. 299, 304 (1932). Doty's claim that she could not be prosecuted for mail fraud, wire fraud, theft from a program receiving federal funds, and aggravated identity theft is meritless as each offense requires proof of an element that the others do not.

Doty also claims that the aggravated-identity-theft count, 18 U.S.C. § 1028A, is multiplicitous of the theft counts, 18 U.S.C. § 666(a)(1)(A). But as § 1028A(a)(1) concerns those who "knowingly transfer[], possess[], or use[], without lawful authority, a means of identification of another person," the elements of this offense are satisfied by a different set of facts.

7

for each offense).  Like multiplicity, concerns about duplicitous indictments spring from the Double Jeopardy Clause.  *See* U.S. CONST. amend. V; *United States v. Burfoot*, 899 F.3d 326, 337 (4th Cir. 2018).  As this is a question of law, we review this claim de novo.

Section 666(a)(1)(A) punishes an agent of a state, local, or tribal government who "embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property" valued at $5,000 or more that is owned by or under the control of the government organization, when that organization "receives, in any one year period, benefits in excess of $10,000 under a Federal program."  18 U.S.C. § 666(a)(1)(A), (b).  A conviction thus requires the government to prove that (1) the defendant was an agent of a state, local, or tribal government organization; (2) in a one-year period, the government organization received more than $10,000 of federal benefits; (3) the defendant embezzled, stole, obtained by fraud, knowingly converted to another, or intentionally misapplied property; (4) the property was owned by or in the custody, care, or control of the government organization; and (5) the property was worth at least $5,000.  *See United States v. Abu-Shawish*, 507 F.3d 550, 554 (7th Cir. 2007).

The second superseding indictment charged two § 666(a)(1)(A) offenses, with each count including Doty's conduct during a one-year period:  from July 2013 to June 2014 (Count 4) and from January 2015 to December 2015 (Count 5).  In doing so, Count 4 included Doty's use of Board money to buy iPads for $3,924 in July 2013 and iPods for $1,180 in December 2013.  Count 5 included two orders of wedding supplies bought with

8

the Board's money, one in February 2015 for $2,069.90 and another in March 2015 for $4,833.20.

Doty contends that each count contains more than one offense, rendering the indictment impermissibly duplicative. But the two uses of the Board's money that make up Count 4—the July 2013 and the December 2013 Apple purchases—do not constitute separate offenses. For each theft fails to meet § 666(a)(1)(A)'s $5,000 threshold. *Cf. United States v. Yashar*, 166 F.3d 873, 875 (7th Cir. 1999) ("An offense is committed when it is completed, that is, when each element of that offense has occurred." (internal citations omitted)). The same is true of the wedding supply purchases charged under Count 5. The money used for either the February 2015 purchase or the March 2015 purchase standing alone was not sufficient to constitute an offense. So Doty's claim that these counts are duplicitous fails, as the counts do not "join[] in a single count [ ] two or more distinct and separate offenses." *Burns*, 990 F.2d at 1438 (quoting 1 Charles A. Wright, *Federal Practice and Procedure* § 142, at 469 (2d ed. 1982)).

Doty also suggests that § 666(a)(1)(A) prohibits aggregating "property" to reach the $5,000 threshold. We disagree. Section 666(a)(1)(A) prohibits "embezzl[ing], steal[ing], obtain[ing] by fraud, . . . knowingly convert[ing] . . . or intentionally misappl[ying] . . . property that . . . is valued at $5,000 or more." Nothing in that prohibition requires the "property" to be a single item or to have been taken at a single moment in time. The "property" may include the money used to buy a single item, like a lone iPad, or to buy a group of items, like six iPads. And the statute does not demand that the "property" be taken at a single moment in time. *Cf. Schaffer v. United States*, 362 U.S. 511, 517–18

9

(1960) (holding that related shipments over time may be aggregated to meet the $5,000 threshold in 18 U.S.C. § 2314); *United States v. Smith*, 373 F.3d 561, 567−68 (4th Cir. 2004) (noting that embezzling property under 18 U.S.C. § 641 may occur over time). Because the statute is not limited either to a single item of property or property taken at a single moment in time, the two counts properly combined purchases to satisfy the $5,000 threshold. *See, e.g.*, *United States v. Cruzado-Laureano*, 404 F.3d 470, 484 (1st Cir. 2005) ("The total value of funds stolen can be aggregated to satisfy the $5,000 minimum that triggers criminal liability under § 666.").[4]

### C.    Prosecutorial vindictiveness

Before trial, Doty moved to dismiss several counts for prosecutorial vindictiveness. She claimed that the government improperly presented the grand jury with additional charges: one of the previously dismissed § 666(a)(1)(A) counts, two new wire-fraud

---

[4] We do not suggest, and need not find, that this aggregation has no bounds. Although the statute does not explicitly articulate a temporal limitation, it does provide a context clue. *See United States v. Valentine*, 63 F.3d 459, 462–63 (6th Cir. 1995). To be prosecuted under § 666(a), "the circumstance described in subsection (b) of [that] section [must] exist[]." 18 U.S.C. § 666(a). The relevant "circumstance" is that the government organization "receives, in any one year period, benefits in excess of $10,000 under a Federal program." § 666(b). And the one-year period must be "a continuous period that commences no earlier than twelve months before the commission of the offense or that ends no later than twelve months after the commission of the offense" and may include "time both before and after the commission of the offense." § 666(d)(5). Conditioning the commission of the offense on the "exist[ence]" of this "circumstance" at least suggests a temporal limit. *See, e.g.*, *Valentine*, 63 F.3d at 463; *United States v. Hines*, 541 F.3d 833, 837 (8th Cir. 2008). We also need not determine whether this aggregation is limited to takings that are somehow related, because the takings in each count were related as part of a common scheme or plan. *Cf. Schaffer*, 362 U.S. at 517–18 (approving aggregation of related shipments of stolen goods); *Hines*, 541 F.3d at 837 (approving aggregation of multiple transactions that were part of a single plan or scheme).

10

counts, and the aggravated-identity-theft count. And she claimed that the government did so without providing new evidence and only after her successful pretrial motion to dismiss the two § 666(a)(1)(A) counts. The district court denied Doty's motion. We review this denial for an abuse of discretion. *United States v. Najjar*, 300 F.3d 466, 480 (4th Cir. 2002).

"[A] prosecutor violates the Due Process Clause of the Fifth Amendment by exacting a price for a defendant's exercise of a clearly established right or by punishing the defendant for doing what the law plainly entitles him to do." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). To satisfy her claim, Doty "must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward [her] and (2) [she] would not have been prosecuted but for that animus." *Id*. In other words, the charges must be brought "solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion." *United States v. Goodwin*, 457 U.S. 368, 380 n.12 (1982).

Bringing new charges in a superseding indictment before trial fails to create a presumption of vindictiveness. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363–64 (1978) (indicting a defendant on more serious charges after he rejected a plea bargain did not create a presumption of vindictiveness); *see also Wilson*, 262 F.3d at 315 ("[A] prosecutor's charging decision is presumptively lawful."). Doty has not made a "showing sufficiently strong to overcome the presumption of prosecutorial regularity" and has not otherwise provided evidence of actual prosecutorial animus. *Wilson*, 262 F.3d at 315−16;

11

*see also* Appellant's Br. 15−19 (failing to raise evidence of animus).  We thus affirm the district court's rejection of this argument.[5]

*          *          *

Phyllis Doty's conduct was proscribed by statute and properly prosecuted.  And so we hold that the judgment of the district court is

<em>AFFIRMED</em>.

---

[5] Doty also alleges that insufficient evidence supported the verdicts.  "[V]iewing the evidence in the light most favorable to the government," we reject Doty's largely conclusory argument that no "rational trier of facts could have found the defendant guilty." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).

Finally, Doty objects to the district court's restitution order.  She first claims that the calculation reflected what she alleges was her husband's conduct, instead of her own.  Second, she claims that the value of the wedding supplies should not have been included because those supplies were eventually returned to and used by the school.  Appellant Br. 29.  Considering the evidence presented at trial, the district court did not err in finding that the relevant conduct was Doty's, not her husband's.  And, even if Doty eventually left behind decorative urns, a colonnade, and other wedding accoutrements, the district court did not abuse its discretion in ordering full restitution of their purchase price. *See* 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence."); *United States v. Stone*, 866 F.3d 219, 224 (4th Cir. 2017) (reviewing preserved objections to restitution orders for abuse of discretion).